## APPEAL OF FRANK HAUPT ET AL.

[THE BOROUGH OF ASHLAND v. F. S. & J. HAUPT.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY, IN EQUITY.

Argued February 18, 1889—Decided April 8, 1889.

[To be reported.]

(a) A duly incorporated borough bought a tract of land through which a creek flowed, constructed a reservoir on the tract and conveyed the water therefrom several miles to the borough, for the use of its inhabitants.

(*b*) Another borough was situated two miles above said tract, on the same stream which constituted its main source of water supply. Certain property owners thereof, whose rights were afterwards obtained by a private corporation, started a plant to pump the waters of the stream into a reservoir and thus supply the latter borough, whose permission they had to lay pipes through the streets.

(*c*) The first named borough filed a bill in equity to restrain the construction of the latter plant and the consequent obstruction of the stream and diversion of the waters, to the injury of the complainants' plant, the supply of water being limited.

1. In such case, the injunction should be granted. The complainants' rights were not those of a riparian owner only; but under the Borough Act of April 3, 1851, P. L. 320, it could enter upon private property, by eminent domain, and appropriate a stream from which to supply its inhabitants with water, subject, however, to liability to compensate private owners for property thus injured or destroyed.

2. As the second mentioned borough was not a party to the suit, and neither it nor the defendants, by its authority, were erecting the plant complained of, the question of the right of said borough to use the water of the creek would not be passed upon, but would remain the same as when the complainant first constructed its works; such right could not be injured or destroyed without compensation being first made.

Before PAXSON, C. J. GREEN, CLARK, WILLIAMS and MC-COLLUM, JJ.

No. 16 July Term 1887, Sup. Ct.; court below, No. 6 July Term 1882, C. P.

On May 16, 1882, a bill in equity was filed by the borough of Ashland against Frank S. Haupt and John Haupt, praying for an injunction to restrain the defendants from interfering with the water supply of the borough. The bill set out:

1. Incorporation of the borough of Ashland under the provisions of the act of February 13, 1857, P. L. 36, its population at 7000, and the existence of manufacturing interests within its limits.

2. The purchase by complainant in 1876 of a tract of 10 acres of land in Butler township, through which the Little Mahanoy creek flows, the construction of a dam on the land, and an appropriation and conveyance of water by pipes from the dam to Ashland, a distance of six miles, at the cost of $63,000.

3. That the inhabitants and manufacturers of Ashland are largely dependent on the water so supplied, and that it is necessary for public purposes.

Statement of Facts.

4. That respondents, without legislative grant or franchise, are about to make provision by pumps, pipe, etc., to supply Frackville with water from the Little Mahanoy creek above the dam of complainant, which will irreparably injure the water-works of complainants and endanger the safety and comfort of the inhabitants of Ashland.

5. That the quantity of water flowing in the Little Mahanoy creek in dry seasons is not more than is needed by Ashland.

6. That defendants have tendered no compensation for the damages, which diverting the stream as complained will occasion.

An answer was filed, which acknowledged the purchase of the ten acres of land by the borough of Ashland, but denied that the water works were constructed in pursuance of any law, or that said borough could appropriate the water of the Little Mahanoy creek. The answer further alleged that the defendants were tenants in common of part of the land upon which the borough of Frackville was built; that the borough contained about 1700 inhabitants who were dependent upon the Little Mahanoy creek for water for domestic purposes; that the water had theretofore been carried by them from the creek, and the purpose of defendants was to convey it by pumping it into a reservoir from which it could be distributed. The answer further alleged the right of the defendants to do this, irrespective of any damage to Ashland, but denied that any damage would result to said borough.

Issue having been joined, the cause was referred to *Mr. D. C. Henning*, as examiner and master. The facts found by him are fully stated in the opinions of the court below and of the Supreme Court.

In October 1886, after having taken a large amount of testimony, the master filed his report, sustaining the bill and recommending an injunction as prayed, basing his recommendation chiefly on the ground of the interference with the plaintiff's riparian rights which would result from the defendant's works. On November 1, 1886, the Mountain City Water Company, a private corporation which had succeeded to the rights and appliances of the defendants, filed a petition asking to come in as a party defendant, and the court made an order accordingly.

Exceptions filed to the master's report, after argument, were disposed of by the court, March 7, 1887, in the following opinion by GREEN, J.:

The defendants have filed exceptions to the report of the master, and they have been argued at great length before me. It is not necessary that they should be reviewed seriatim.

The question at issue is a most important one, and involves the interests of thousands of people. It affects the water supply of the borough of Ashland, after an expenditure of between $60,000 and $70,000, in the erection of a reservoir and in laying the pipes to carry the water into the town. A vast amount of testimony has been taken, making a book of more than 350 pages of printed matter, and the master has made an able and elaborate report.

The facts found by him, briefly stated are as follows: The borough of Ashland was incorporated by act of assembly of February 13, 1857, and contains a population of between seven and eight thousand. The act of incorporation conferred upon it all the powers and privileges given under the general borough law of 1851; among others, the right to provide a supply of water for the use of the inhabitants. In 1876 a tract of land lying on the Little Mahanoy creek was purchased by the borough, and a dam or reservoir was constructed for the purpose of retaining the water. From this point trenches were dug and pipes laid a distance of about six miles to the borough, where it is in general use for domestic and manufacturing purposes. There is no other general supply. The amount of money expended by the borough was about $63,000.

The defendants are the owners of a tract of land, known as the James Stephens tract, upon the same stream, near the head waters, and about a mile and a half above the reservoir of the plaintiff, and lying wholly or partly within the limits of the borough of Frackville. They have sold a large number of lots to different persons, on which houses have been erected, and the town of Frackville has become a place of considerable population. None of the lots sold lie on the stream, but are located upon much higher ground. For the purpose of supplying these lot owners and other residents of Frackville with water from this stream, the defendants commenced

the building of a reservoir and laying of pipe. The water was to be forced up to a reservoir located upon high ground, by means of a steam power, and be from thence distributed to those who were willing to pay the defendants for its use. .It was a private enterprise in which the defendants were engaged. The Little Mahanoy creek is but a small stream, and the master finds that in certain portions of the year, during the summer and dry seasons, there is not more than sufficient to supply the wants of the inhabitants of Ashland. The defendants, when notified to stop their operations, refused, claiming the right to use the water for the purpose aforesaid, and denying any superior right in plaintiffs to divert the water for the uses of the borough of Ashland. Thereupon this bill was brought for the purpose of restraining the defendants from carrying out their intention. These are the main facts of the case as found by the master, and from which he draws the following conclusions of law:

1. That the plaintiff, in its purpose of providing a supply of water, had the right, under the law, to purchase the tract of land on the Little Mahanoy creek and to build a reservoir and water-works, even though the tract of land was outside the borough limits, being about six miles distant therefrom.

2. That by reason of the ownership of said tract the borough acquired the rights of a riparian owner, and that the relationship of upper and lower riparian owners existed between the defendants and plaintiff in May, 1882, when the bill was filed.

3. That the appropriation and diversion of this stream by the plaintiff could work no injury to any one but the lower riparian owners; therefore defendants could not complain of such diversion.

4. That the defendants have all the rights of upper riparian owners, the same not having been extinguished by purchase of the plaintiff, but that these rights do not extend to the erection of water-works and furnishing water to those who are not riparian owners, to the detriment of the lower riparian owners.

5. That defendants can claim no compensation, because they have been deprived of none of their rights to the use of the water.

6. That the stream not being large enough to accommodate both parties, and the plaintiff having used all reasonable appliances, and having employed the best of professional skill to prevent the leakage and waste of water, it follows that the plaintiff has shown the better right, and that the defendants must be enjoined from their proposed illegal use of the water.

The master has discussed these different propositions at length and with great ability, and has cited numerous authorities to sustain his conclusions. Whilst not dissenting from the conclusions to which the master has come, I cannot but think that he has placed the rights of the borough of Ashland upon entirely too narrow a foundation. It might work serious injury to the borough, if it only acquired the rights of a riparian owner, when it bought the tract of land and erected its water-works at an expense of upwards of sixty thousand dollars. As it strikes me, after considerable reflection, the question in this case does not turn upon the fact whether the borough of Ashland has acquired the rights of a riparian owner, and, therefore, only liable to the infra riparian owners for any diversion of the stream to supply the wants of the inhabitants of Ashland. Its right as a riparian owner would not authorize such diversion of the water, and the infra riparian owners would not be bound to accept compensation for the relinquishment of their rights to the use of the water. They might insist that the water should not be diverted, and might harass and annoy the borough by suit after suit, until the water was restored again to its original channel. Nor would the rights of the supra riparian owners be in any wise changed by reason of such diversion, if the borough has no larger right than that of a riparian owner; and if they should also divert the water to the injury of the borough, the question as to the injury, might turn upon the injury done to the borough as a riparian owner, and not upon the injury done to the water-works and to the thousands of people dependent upon this supply of water.

Therefore I think the right of the borough must rest upon higher and more secure ground than this. It must rest, not upon its riparian rights, but upon its rights of appropriation of the stream, for the purpose of obtaining a supply of water for the inhabitants of the town. That is, it must rest upon

the right of eminent domain, if it has such a right. The main question in the case must therefore be, did the borough have the right of appropriation under its charter.

Under the general borough law of 1851, the borough of Ashland had the power " to provide a supply of water for the use of the inhabitants; to make all needful regulations for the protection of the pipes, lamps, reservoirs and other constructions and apparatus, and to prevent the waste of water so supplied." By the 2d section of the same act, the borough had the power " to enter upon the lands and premises of any person or persons for the purpose authorized by this act, by themselves and their duly appointed officers and agents." And to make this right of entry upon private lands to conform to constitutional requirements, it is further provided in the 27th section of the act, that " private property shall not be taken for the use or purpose of the corporation, without the consent of the owners, or until just compensation shall be made therefor, according to the laws of this commonwealth." Here then exists in the borough the power to provide a supply of water, and the power to enter upon lands for this purpose. From this follows, by necessary implication, the right of appropriation of a stream of water, or of a spring or springs, entirely independent of any riparian rights which may have been acquired by the purchase of land upon the stream. And another consequence naturally follows, that this power of appropriation is in its nature exclusive. I refer not to streams where the supply of water is ample for all, for in such cases there can be no contest. But in a stream which furnishes a supply only for one, and not enough for two, there the right is in the one who has first legally appropriated the stream, and is exclusive of all others. Prior in tempore, portior in jure. Disastrous indeed would be the situation in which the borough might be placed, if it could not base its right to the stream of water on this right of appropriation conferred by its charter. If unable to rely upon this, what would there be to prevent some other corporation, organized under the general act of 1874, from appropriating the water and cutting off the supply from the borough? Would it not be done, according to law, and would not the new corporation be the first legal appropriator? What claim would the borough have to any damage,

beyond what it might suffer as a riparian owner? What would become of the many thousands of dollars expended in the erection of its water-works and connections, now become useless and valueless? But it is needless to pursue this branch of the subject at any greater length. I have said this much, in order to show how important it is that the rights of the borough of Ashland should be placed upon unassailable ground.

There is no dispute as to the fact of the appropriation of the Little Mahanoy creek by the borough, nor that it was the first appropriator. The master has found as a fact that the supply of water in certain seasons of the year is scarcely sufficient for the wants of the inhabitants of the town, and that the complainant has been prudent and careful in building its works so that there shall be no unreasonable leakage or waste.

Under such a state of facts the plaintiff is clearly entitled to an injunction against the defendants to prevent them from diverting the water from its usual channel, to the injury of the complainant. But this further fact appears, that whilst the complainant has appropriated the stream for its own use, yet the rights of the defendants as supra riparian owners have not been extinguished. The complainant has not made compensation for them, and the defendants have still full power to exercise them. But as has been fully shown by the master, those rights do not extend to the furnishing of the water to the inhabitants of Frackville and others not riparian owners, at the expense of the inhabitants of Ashland, and therefore an injunction must issue to restrain such misuse of the water. The form of the injunction recommended by the master is too broad in its terms, because it seems to ignore the riparian rights of the defendants which have not been divested.

It has been most vigorously contended that the inhabitants of the borough of Frackville have rights to the water of this stream which cannot be ignored, because the right to water is a God-given right, of which they cannot be deprived, and because the stream flows within the limits of the borough, and almost within a stone's throw of their very doors. But if no other answer were given, it would be sufficient to say that they are not before us, and the defendants cannot shield themselves under any supposed rights they may have, for those rights are not acknowledged by the defendants, inasmuch as

they make them pay for all the water they use. It is also clear that under the principles governing this case they have no right to the use of this water superior or equal to those of the complainant.

We shall therefore direct a permanent injunction to issue against the defendants, their employees, and agents, in accordance with the views herein expressed, and direct that the defendants pay the costs of this proceeding. Let a decree be prepared and submitted.

The court then entered the following decree:

And now, to wit, March 7, 1882, . . . . . it is ordered, adjudged and decreed that the respondents, Frank S. Haupt and John Haupt, their agents, employees and workmen be perpetually enjoined and restrained from placing any obstruction in the Little Mahanoy creek at or near Frackville above the dam and reservoir of the complainants, thereby obstructing the flow of said stream, and from diverting the natural flow of the water of said creek and any of its tributaries at any place or point above the dam and reservoir of the borough of Ashland erected on said creek, and that the respondents, Frank S. Haupt and John Haupt, pay the costs of this case.

The defendants thereupon took this appeal, assigning the said decree for error.

*Mr. Fergus G. Farquhar*, for the appellants:

1. Admitting that the state has delegated to boroughs the right to supply water to its inhabitants and for that purpose " to enter upon lands and premises of any person or persons," and that this includes the right to take private property and devote it to public use; it cannot directly or indirectly deprive persons, who have lawful access to a stream, from using the water of it for their natural or domestic purposes: Philadelphia v. Collins, 68 Pa. 106; Mayor of Phila. v. Commissioners of Spring Garden, 7 Pa. 348; Hoy v. Sterrett, 2 W. 327; Embrey v. Owen, 6 Exch. 353. If in the exercise of this right all the water in the stream be used, it is damnum absque injuria to those below: Penn. R. Co. v. Miller, 112 Pa. 34.

2. Conceding again, that the borough of Ashland might, by exercising the right of eminent domain acquire exclusive

rights to the waters of the Little Mahanoy creek, there is nothing in the record to show an exercise of this right of eminent domain. It is fundamental that when property is taken or injured under this power, compensation must first be secured to the property owners. There is nothing to show payment or even provision for the ascertainment of damages in this case. Moreover, the borough of Frackville and its inhabitants have rights in the water of the Little Mahanoy creek equal if not superior to those of the borough of Ashland: Embrey v. Owen, 6 Exch. 353; Fleming's App., 65 Pa. 444; Merrifield v. City of Worcester, 110 Mass. 116.

*Mr. John W. Ryan* and *Mr. W. A. Marr*, for the appellee:

The rights of riparian owners are measured by the size and capacity of the stream: Wheatley v. Chrisman, 24 Pa. 298; Penn. R. Co. v. Miller, 112 Pa. 41. A borough's authority to enter upon lands and appropriate streams of water for the use of its inhabitants is based upon its necessities, the common law, and the acts of assembly under which it is chartered: Dillon on Municipal Corps.,§§ 55, 533. Having exercised its right as to a stream and appropriated the same to the use of its inhabitants, another party cannot subsequently divert the water of the stream to the injury of the one first appropriating it: Angell on Watercourses, 219; 2 Black. Com., 402; Kelly v. Natoma Water Co., 6 Cal. 105; Morris v. Bickwell, 7 Cal. 261; Davis v. Gale, 32 Cal. 26; Lincoln v. Chadbourne, 56 Me. 197; Samuel v. Blanchard, 25 Wis. 329; Gould v. Boston Duck Co., 13 Gray 442; Washburn on Easements, 3d ed. 292, 297, 298, 299, 300 and 301. It is a familiar exercise of the power of a court of chancery to prevent by injunction injuries to watercourses by diversion or pollution: McCallum v. Germantown Water Co., 54 Pa. 57; Daniel's Chancery Pr., 1638, 1639; Shenandoah Co.'s App., 2 W. N. 46.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a bill filed by the borough of Ashland, plaintiff below, to restrain the defendants, Frank S. Haupt and John Haupt, from interfering with the water supply of said borough. The facts of the case, so far as it is necessary to state them, are substantially as follows:

The town of Ashland has a population of about seven thousand inhabitants, and was duly incorporated as a borough in the year 1857, under the laws of this commonwealth. In the year 1876 the said borough purchased a tract of land containing ten acres and upwards, situate in Butler township, about two miles below the head waters of the Little Mahanoy creek, which flows through it; and in the same year constructed a large basin or reservoir on said tract of land, and appropriated the waters of said creek and its tributaries for the purpose of providing a supply of water for the use of the inhabitants of the said borough. The water was conveyed by means of pipes from the reservoir, which is several miles distant, and is distributed to the inhabitants for private purposes, and such public purposes as are found needful. The cost of said works is stated and shown to be about $63,000.

About two miles above the dam is the borough of Frackville, through which the Little Mahanoy creek flows. This town, it is alleged, contains about seventeen hundred inhabitants. The creek aforesaid is its main source of water supply. There are but few wells and springs in the borough that do not at times become dry, and water has been hauled from the creek to different houses. In 1882, the defendants, being property owners in the borough, in order to facilitate the supply of water to those inhabitants thereof who depended upon the Little Mahanoy creek, determined to pump water from the creek into a reservoir, located on high ground, and from thence distribute it by pipes to those who might need it. Shortly after this work was commenced, this bill was filed to restrain the defendants from obstructing the stream or diverting the water from its channel. In April, 1883, the Mountain City Water Company was organized, and incorporated under the act of 1874, for the alleged purpose of supplying the borough of Frackville with water. It purchased from the defendants, Frank S. and John Haupt, their appliances and whatever right it could acquire from them to take water from the Little Mahanoy creek. In 1886, it presented its petition to the court below, asking to be permitted to come into this case as defendant, by way of supplemental bill or by amendment of the original bill, which was allowed. The case was referred to a master, who, after a large amount of testimony had been taken, submitted an elaborate

report, sustaining the bill, and recommending an injunction, principally on the ground of the interference with the rights of the plaintiff as a riparian owner. Upon exceptions, the learned court below sustained the conclusions of the master, and made the injunction perpetual, but upon other grounds than the riparian rights of the plaintiff. The master found, as a conclusion of law from the facts, "that by reason of the ownership of said tract the borough (Ashland) acquired the rights of a riparian owner, and that the relationship of upper and lower riparian owners existed between the defendants and plaintiff in May, 1882, when the bill was filed." To this, and other propositions based upon the same view, the learned court below said: "Whilst not dissenting from the conclusions to which the master has come, I cannot but think that he has placed the rights of the borough of Ashland upon entirely too narrow a foundation. It might work serious injury to the borough, if it only acquired the rights of a riparian owner, when it bought the tract of land and erected its water-works at an expense of upwards of sixty-thousand dollars."

If the authority of the plaintiff were measured by its rights as riparian owner it would be slender enough. It might indeed use the water for the domestic purposes incident to the said ten acres of land. If there was a tenant thereon he could use it for watering his stock and for household purposes; for any useful, necessary, and proper purpose incident to the land itself, and essential to its enjoyment. But that the rights of a riparian owner would justify the plaintiff in carrying the water for miles out of its channel to supply the borough of Ashland with water, is a proposition so palpably erroneous that it would be a waste of time to discuss it.

Whatever right the plaintiff borough had to take the water from this stream for the use of its inhabitants must be found in the act of April 3, 1851, P. L. 320, commonly known as the Borough Act, or it does not exist at all. The second section of said act authorizes boroughs "to provide a supply of water for the use of the inhabitants, to make all needful regulations for the protection of the pipes, lamps, reservoirs, and other construction or apparatus, and to prevent the waste of water so supplied." Power is also given in the same section, "to enter upon the lands and premises of any person or persons for the purposes

authorized by this act, by themselves and their duly appointed officers and agents ; " while the twenty-seventh section provides that " private property shall not be taken for the use or purpose of the corporation, without the consent of the owners, or until just compensation shall be made therefor, according to the laws of this commonwealth." It will thus be seen that the act of 1851 expressly authorizes boroughs to provide a supply of water for the inhabitants thereof; it clothes them with the right of eminent domain, by which they may enter upon the premises of any person or persons, and appropriate a spring or stream of water to provide such supply, subject only to the constitutional mandate to make compensation for whatever is so taken. And under the present constitution there can be no question as to its liability to make compensation for property injured or destroyed by the erection or construction of its works. We have no doubt the plaintiff had the power under the act of 1851 to construct its dam and carry this water by pipes to the borough of Ashland, and distribute it to and among the inhabitants thereof. There, however, its right ceases. It would have no power to carry it outside the borough and supply any of the inhabitants of another place or municipality. This is because the act of 1851 only authorizes it to be done for the inhabitants of the borough. It is true, where the water supply is abundant, enough for everybody, there would be no one to complain of its excessive use; but where it is limited, and other parties are deprived of the use of the water, who are entitled to it, for the benefit of those who can show no authority therefor, we must expect the rights of the respective parties to be clearly and sharply defined and rigidly enforced.

We have nothing to do with the rights of the riparian owners below the plaintiff's dam. If they have been injured, they have their claim to compensation if it has not already been made. Our concern is with the upper riparian owners, whose right to use the water of the Little Mahanoy creek the defendants claim has been impaired by the decree of the court below.

I do not consider it necessary to consume time by an extended discussion of the rights of riparian owners. It is one of the most interesting branches of the law, but its principles are too well settled to need elaboration here. The law was well stated

by Justice THOMPSON in Philadelphia v. Collins, 68 Pa., at page 116, as follows : " Every individual residing upon the banks of a stream has a right to the use of the water to drink and for the ordinary uses of domestic life ; and where large bodies of the people live upon the banks of a stream, as they do in large cities, the collective body of the citizens has the same right, but, of course, in a greatly exaggerated degree." And it was said by Chief Justice GIBSON, in Mayor of Philadelphia v. Commissioners of Spring Garden, 7 Pa., at page 363: " The inhabitants of the district might have lawfully dipped from the margin of the pool water enough for their several necessities ; but instead of drawing it by hand they have combined their funds to produce a cheaper and better transportation," etc. In each of these instances the learned justice was speaking of a stream of water which is a public highway.

To some extent the same principle may be applied to what may be called a private stream. In the case of a river or public highway all the people of the state have access to it ; may ride over it, and use the water. Not so with a private stream. In such case no one can use it or take the water except at a public crossing. There the traveler may stop, refresh himself and water his horse ; the water has no owner, and he impairs no man's right. But except at public crossings, such as a road or a street, no one but a riparian owner can use the water ; not because the latter has any ownership in it, but because the stranger has no right of access to it. There can be no such thing as ownership in flowing water ; the riparian owner may use it as it flows ; he may dip it up and become the owner by confining it in barrels or tanks, but so long as it flows it is as free to all as the light and the air. It follows from what has been said that dwellers in towns and villages watered by a stream may use the water as well as the riparian owner, provided they have access to the stream by means of a public highway. The borough of Frackville, as before observed, is not a party to this proceeding ; nor are the other supra riparian owners upon this stream. Their rights, therefore, cannot be determined now. We will not refer to them further than to say that whatever rights the inhabitants of Frackville, or the borough, as representing their collective rights, had to the use of the water of the Little Mahanoy creek at the time the

plaintiff constructed its dam, they have still. I do not say that the plaintiff may not impair those rights in the exercise of its power of eminent domain, but I do say that they cannot be taken, injured, or destroyed without compensation being first made as provided by the constitution.

The plaintiff, however, disclaims all intention of interfering with the rights of the supra riparian owners, and particularly, that it does not wish to deprive the inhabitants of the borough of Frackville of their accustomed use of the water; that the said borough is not a defendant; that the defendants are merely attempting to shield themselves behind the supposed rights of the borough. It is very true the borough is not erecting the works, nor is any one doing so with its authority or as its agent. It appears to have authorized the defendants to lay their pipes through its streets. This, however, does not constitute the water company its agent, nor make the acts of said company the acts of the borough. Were the latter erecting works under the act of 1851 to supply its inhabitants with water, it would be confined to the terms designated in the act, and could use the water only for the benefit of its own inhabitants; whereas these defendants are affected by no such limitations, and if they may take the water at all, they may do so for the benefit of any one outside of the borough of Frackville; they could convert it to the use of another municipality, or apply it to the benefit of collieries and other industries remote from Frackville. This the defendants have no right to do, either against riparian owners, or those who have lawfully acquired the right to use the water. As the report of the master clearly shows that the works of the defendants, if completed, will render the supply of water for the borough of Ashland insufficient, this injunction must be continued.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.