The Philadelphia and Reading Railroad Company by Joseph S. Harris, Edward M. Paxson and John Lowber Welsh, Receivers, Appellant, *v.* The Pottsville Water Company.

[Marked to be reported.]

*Waters—Rights of riparian owners.*

Riparian owners have no ownership of running water, and no right to divert or sell it for general use, and are limited in their own use of it to ordinary domestic purposes.

*Water companies—Lease—Riparian owners.*

The right which a water company has acquired in a stream by a lease from a riparian owner, and not by the exercise of the right of eminent domain, has no greater dignity than the right of the riparian owner himself.

*Water companies—Corporation—Rights of company as riparian owner.*

When a corporation clothed with the right of eminent domain takes the water of a stream for its corporate use, not by an exercise of its right as such, but by virtue of its right as a riparian owner, it has no other or higher right in the water than an ordinary riparian owner, and it matters not what the needs of its business are for the water so used.

*Water companies—Railroad companies—Waters—Riparian owner—Lease.*

A court of equity will not enjoin a water company having the right of eminent domain from taking water from a stream, where it appears that the plaintiff is a railroad company claiming a right to the water for the use of its locomotives, under a lease from a riparian owner.

Argued Feb. 16, 1897. Appeal, No. 550, Jan. T., 1896, by plaintiff, from decree of C. P. Schuylkill Co., Nov. T., 1896, No. 6, dismissing bill in equity. Before Sterrett, C. J., Green, McCollum, Mitchell and Dean, JJ. Affirmed.

Bill in equity for an injunction. Before Pershing, P. J., and Bechtel, J.

The bill averred that the complainant was the lessee of the Mine Hill Railroad; that the Mine Hill Railroad Company took water for engines used on the Mine Hill Railroad from Indian Run stream, in Branch township, in Schuylkill county, from about the year 1885, and such taking was continued up to the date of the filing of the bill of complaint; that a lease was made by Samuel H. Shannon on January 10, A. D. 1866, to the

Philadelphia and Reading Railroad Company, for the term of ten years, to take water from said Indian Run for the use of engines used on the Mine Hill Railroad, with the privilege of purchasing a perpetual right to lay pipes and take water from stream upon payment of the sum of $6,000 at any time during the term of said lease; that when said term had expired, the said Samuel H. Shannon made a new lease to said complainant for a period of twenty years, of the same right, with a similar clause as to the purchase of a perpetual right to lay pipes and take water from said stream upon payment of the sum of $6,000 at any time during the said term or at the end thereof, and covenanted to make a deed to said complainant for the said property, and bound his executors and administrators to make such deed; which lease was duly recorded in Schuylkill county, July 13, 1876; that the complainant expended large sums of money for the erection of a water station and the laying of pipes and keeping them in repair, and that without said water supply the business of the Mine Hill Railroad will be seriously interfered with and irreparable injury will be done to the complainant by being deprived of said water supply, and by the appropriation of said property by the defendant; that the right of the Mine Hill Railroad Company to have and use the water of Indian Run was a matured right prior to the making of the agreements between the Philadelphia and Reading Railroad Company and Samuel H. Shannon, aforesaid; that prior to the end of the term of the lease for twenty years, to wit: on October 29, 1895, the Philadelphia and Reading Railroad Company, acting by and with the assent of the receivers of the said company, at a meeting of the board of directors of said company, adopted a resolution declaring that the said railroad company did conclude and determine to end the lease then existing, and to exercise the right in said lease to take a deed in perpetuity for the water rights and property mentioned in said lease, and directed notice of such determination to be given to the heirs of Samuel H. Shannon (the said Samuel H. Shannon being then deceased), and of the readiness of the said company to pay the sum of $6,000 in cash on the execution and delivery of a deed in accordance with the terms of said lease, and notice of such determination and of the adoption of said resolution was given to the heirs of Samuel H. Shannon, deceased, who are also the exec-

utrices of the estate of said deceased, prior to the termination of said lease and contract; that the Pottsville Water Company, by means of pipes laid and a dam in process of construction on said Indian Run stream, intend to take all the water of said stream and to destroy the same as a source of water supply for the complainant, and also to destroy the dam belonging to the complainant on said stream; that the Pottsville Water Company claim to take the said property by virtue of condemnation proceedings in the common pleas of Schuylkill county, against the heirs of Samuel H. Shannon, deceased, although the Philadelphia and Reading Railroad Company or the Mine Hill Railroad Company were not made parties to said proceedings, notwithstanding that the Philadelphia and Reading Railroad Company was in actual possession of said property at the time the said condemnation proceedings were instituted and all the time since; that the said property is held by the complainant for public purposes and public use, and the complainant being a corporation for public purposes, the said property cannot be taken from it by the Pottsville Water Company, respondent.

Upon an allegation of no adequate remedy at law, an injunction was prayed for to restrain the defendant from taking the said property and from interfering with the dam and pipes of the complainant so as to prevent it from having a supply of water sufficient at all times for the engines used on the Mine Hill Railroad.

The defendant's answer denied that the Mine Hill Railroad Company acquired any right in or to all or any of the waters of Indian Run stream, or had any easement or right of way or title to any portion of the lands over which its pipes are laid to Indian Run stream, but it admitted the occupation of the property by the complainant and that it used and enjoyed the waters of said stream, but averred that the lease providing for the sale or use of the waters of said stream for purposes other than those appertaining to riparian ownership is void, and that all rights under the said lease fell with the condemnation proceedings referred to in the complainants' bill.

The answer denied the right of the complainant to any right of way or use of the waters aforesaid, because the right was enjoyed only under a lease, and that the complainant under the charter of the Mine Hill Railroad Company had no such right,

and that if it had such right it did not avail itself of it but exercised the right simply as a tenant under an admitted owner, and that no proceedings under the right of eminent domain were resorted to to acquire said property.

The answer denied that the complainant has any right to the use of the water and right of way thereto by virtue of its being a common carrier or quasi public corporation, and averred that the complainant is a trespasser on the premises of the respondent; that the right to the use of said property is only by the lease from Samuel H. Shannon, a riparian owner, and that the complainant acquired no greater right than the lessor had as a riparian owner, and that the proceeding to condemn said property in the hands of the heirs of said Samuel H. Shannon divested the title which the complainants had in said property; that the waters of Indian Run are necessary for the Pottsville Water Company, and in enlarging its plant said water company is about to use the Indian Run stream, and alleging that it is necessary to do so for its business.

The answer denied the allegation in the complainant's bill that the right to have and use the waters of Indian Run stream was a matured right prior to the agreements made between the Philadelphia & Reading Railroad Company and Samuel H. Shannon, and averred that the complainant occupied the land as a tenant of said Samuel H. Shannon.

A preliminary injunction was granted and, subsequently, on motion, the court entered a decree dissolving the injunction and dismissed the bill.

*Error assigned* was decree dismissing bill.

*John F. Whalen* and *James Ellis*, for appellant.—The protection of legal rights to property from irreparable, or at least from serious, damage pending at the trial of the legal rights is part of the original and proper office of a court of equity : Angell on Water Courses, sec. 444 ; Story's Equity. Jur. sec. 925 ; Bispham's Principles of Equity, sec. 440 ; Haugh's App., 102 Pa. 42 ; 2 Redfield on Railroads, (5th ed.) sec. 215 ; Carlisle v. Cooper, 6 C. E. Green (N. J. Equity Reports), 576 ; Com. v. Pittsburgh & Connellsville R. R., 24 Pa. 159 ; Bitting's App., 105 Pa. 517.

Taking property under the right of eminent domain requires only that the corporation taking shall have the consent of all owners affected by the taking, or the payment to the owner of damages for the taking : Lord v. Water Co., 135 Pa. 122.

In a lease containing an option to purchase, when the lessee elects to purchase, the title relates back to the beginning of the lease : Kerr v. Day, 14 Pa. 112 ; Daniels v. Davison, 16 Ves. Jr. 253 ; Napier v. Darlington, 70 Pa. 64 ; Frick's App., 101 Pa. 485 ; Siter's App., 26 Pa. 178 ; Peoples Street Ry. v. Spencer, 156 Pa. 85.

The property of a corporation chartered to serve a public purpose, and an actual and necessary use, cannot be taken by another corporation, unless such other corporation has express authority from the legislature so to do : Penna. R. Co.'s App., 93 Pa. 150 ; Pittsburgh Junction R. R. Co.'s App., 122 Pa. 511. The facts of the case of Diffendal v. Midland R. R. Co., 86 Va. 459, are very similar to the facts in the present case. In the case of Read v. Erie Ry. Co., 97 N. Y. 341, a grant to a railway company precisely like the Shannon grant to the Phila. & Reading R. R. Co. was sustained by the New York courts.

*George M. Roads* and *D. C. Henning,* for appellee.—Water is a movable, wandering thing, and must of necessity continue common by the law of nature, so that one can only have a temporary, transient, usufructary property therein: 2 Blackstone's Com. 18 ; Mason v. Hill, 5 Barn. & Ad. 11 ; Gould on Waters, sec. 204 ; Mayor v. Comm. of Spring Garden, 7 Pa. 348.

A grant of water power is not a grant of water for anything else than the propulsion of machinery. It is not a grant of property in the corpus of the water as a chattel: Higgins v. Flemington Water Co., 36 N. J. Eq. Rep. 538 ; Gardner v. Village of Newburgh, 2 Johns. Ch. 162.

The natural and primary uses of water are its domestic uses : Mayor v. Comm. of Spring Garden, 7 Pa. 348 ; Penna. R. Co. v. Miller, 112 Pa. 34 ; Haupt's App., 125 Pa. 211 ; Clark v. Penna. R. Co., 145 Pa. 438 ; Lord v. Meadville Water Co., 135 Pa. 122.

It is elementary law that one cannot claim title against his own grant: Horn v. Miller, 142 Pa. 557 ; Oliver v. Ry. Co., 131 Pa. 408.

Appellant's leasehold rights, however they may be considered, were contracted for subject to the right of eminent domain existing in the state, and must give way before it: In re Twenty-Second Street, 102 Pa. 108; Bailey v. Miltenberger, 31 Pa. 37; Justice v. Nesquehoning Valley R. R., 87 Pa. 28.

The following cases hold trespass to be the proper remedy: Fries v. Southern Penna. R. R., 85 Pa. 73; Hoffman's App., 118 Pa. 512; Fischer v. Catawissa R. R., 175 Pa. 554; Lord v. Water Co., 135 Pa. 122; Penna. R. Co. v. Eby, 107 Pa. 166; Bethlehem Gas & Water Co. v. Yoder, 112 Pa. 136; Oliver v. Ry. Co., 131 Pa. 408; Towanda Bridge Co., 91 Pa. 215.

A court of equity has no jurisdiction to settle a disputed legal title to land, or to a right of way, on a bill in equity filed by the party in possession, averring that a multiplicity of suits at law may result to redress threatened trespasses: Washburn's App., 105 Pa. 480; Rhea v. Forsyth, 37 Pa. 503; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Minnig's App., 82 Pa. 373; Rowand v. Finney, 96 Pa. 192; New Castle v. Raney, 130 Pa. 546.

OPINION BY MR. JUSTICE GREEN, October 11, 1897:

It must be conceded that the title of the appellant company was not acquired by an exercise of the right of eminent domain, but by voluntary leases from the owners. Hence it follows clearly, under our well settled decisions, that the right acquired under the leases, having been obtained from a riparian owner, has no greater dignity than the right of the riparian owner himself. It is just as clear that riparian owners have no ownership of running water, no right to divert and sell it to strangers for general use, and are limited in their own use of it to ordinary domestic purposes. A very few of our cases easily determine all matters in controversy here. Thus in Pa. R. R. Co. v. Miller, 112 Pa. 34, it was held that where a railroad company owns the land in fee, through which a stream flows, and it takes water from the stream at a point on its own land, for the purpose of supplying its locomotives, such taking is not under the right of eminent domain, but by virtue of its rights as a riparian owner. The case on its facts was much stronger than the case at bar. The company owned the land in fee through which the stream ran, and they only used the water to supply their own locomo-

tives.   They increased the quantity of water to be used for that purpose by erecting an engine on their own land along the edge of the stream and pumping from the pool of the plaintiff's dam water enough to flow through a six inch pipe, whereas they had only used a four inch pipe prior thereto.   The owner of the mill property immediately below on the same stream, complained that the supply of water necessary for his mill was materially diminished, and brought an action to recover damages for his injury, and this Court sustained his right to recover.   The same arguments were made there as here, that the company owned the water and the right to use it by virtue of its right of eminent domain, but we held that they did not hold by such a right, but only as riparian owners, and therefore could only use it as such.   PAXSON, J., delivering the opinion, said, " It was contended upon the trial below, and it was urged here, that the proceeding should have been by a jury of view under the act of May 16, 1857, and not by a common law action.   We do not regard this point as tenable, for the reason that the water was not taken by the company under the right of eminent domain, but by virtue of its right as a riparian owner.   As before stated, it owns the land in fee simple at the point where the water is taken, and has precisely the right of every other riparian owner on that stream.   It may use the water as other owners use it without responsibility to any one therefor, provided such use is not of a character to injure other riparian owners on the same stream.   The principle established by a long line of decisions is that the upper riparian owner has the right to the use of the stream on his land for any legal purpose, provided he returns it to its channel uncorrupted and without any essential diminution ; that in all such cases the size and capacity of the stream is to be considered, and that any interruption of, or interference with, the rights of the lower riparian owner is an injury for which an action will lie, unless too trifling for the law to notice."   After stating the general doctrine that a riparian owner has the right to use the water of the stream passing over his land for ordinary domestic purposes, the opinion proceeds, " But where the upper riparian owner diverts or uses the water, not for ordinary domestic purposes, such as are inseparable to, and necessary for, the use of his land, but for manufacturing or other purposes having no necessary relation to his use of his

land, the case is different.   In Wheatly v. Chrisman, supra, it was held that ' a proprietor of land over which a stream of water runs, has as against a lower proprietor, the use only of so much of the stream as will not materially diminish its quantity.   His right is not to be measured by the reasonable demands of his business.' "   The principal value of this case is that it determines that when a corporation clothed with the right of eminent domain takes the water of a stream for its corporate use, not by an exercise of its right as such, but by virtue of its right as a riparian owner, it has no other or higher right in the water than an ordinary riparian owner, and it matters not what the needs of its business are for the water so used.

In the case at bar the appellant company held its right to the water of the stream in question only by virtue of leases from the riparian owner, Dr. Shannon, and it does not matter in the least that it had an option to buy the land through which the stream runs.   If it had actually made the purchase and taken the conveyance in fee simple, it would have been in no better condition in this respect under the decision last cited.

Another very forcible illustration of the doctrine is found in the case of Haupt's Appeal, 125 Pa. 211.   There an incorporated borough bought a tract of land through which a creek flowed, constructed a reservoir on the tract and conveyed the water therefrom several miles to the borough, for the use of its inhabitants.   Another borough was located about two miles above on the same creek, and certain private parties whose rights were subsequently acquired by a private corporation, started a plant to pump the waters of the stream for the use of the upper borough.   The lower borough filed a bill to restrain the pumping and diversion of the water, and we sustained an injunction on the express ground that the lower borough had acquired its rights by an exercise of its right of eminent domain, as well as by a purchase of the land.   We said : " If the authority of the plaintiff were measured by its rights as riparian owner it would be slender enough.   It might indeed use the water for domestic purposes, incident to the said ten acres of land.   If there was a tenant thereon he could use it for watering his stock and for household purposes : for any useful, necessary and proper purpose incident to the land itself, and essential to its enjoyment.   But that the rights of a riparian owner would justify

the plaintiff in carrying the water for miles out of its channel to supply the borough of Ashland with water, is a proposition so palpably erroneous that it would be a waste of time to discuss it."

In Lord v. Water Co., 135 Pa. 122, a water company had acquired by purchase an acre of ground upon which there was a strong spring, causing a stream of water to flow from it and over the lands of a lower owner. The water company undertook to divert the water of the spring to supply the inhabitants of Meadville with water for their necessary use. The lower owner brought an action to recover damages for the loss of the water, and recovered a verdict and judgment which we sustained. The water company had the right of eminent domain, but did not exercise it. We said, "It was conceded upon the argument that the company had the right to divert it (the water) under its power of eminent domain. But it had never exercised such right. To do so involves compensation to those who are or may be injured by such diversion. Compensation was not made, nor security tendered. While a city or borough or a company having the right of eminent domain may take a spring or stream of water to supply a municipality, it can only do so by making compensation to those who are deprived of the use of the water, as provided by the constitution. A taking without compensation is a trespass ; as much so as the taking of land by a railroad company to construct its road without making compensation or filing a bond with security, as provided by law. Where the power to take exists, it must be exercised according to law. If it is not, the corporation so taking becomes a trespasser, and may be proceeded against as such. It is a mistake to assume that the purchase of this acre of land gave the company an absolute right to the spring of water. The water did not pass by the deed beyond its reasonable use by the vendee as a riparian owner."

The foregoing principles were all repeated in Clark v. Railroad Co., 145 Pa. 438, and are not at all in dispute. It remains only to apply them to the facts of this case. The defendant is clothed with the power of eminent domain, and is endeavoring by a strict compliance with the law to exercise its right to supply the citizens of Pottsville with an adequate quantity of water for their consumption. It is met by the claim of the plaintiff to a right to use the water of the stream in question to supply

water for the use of its locomotives, and this right, they say, will be interfered with, and perhaps destroyed, if the water company is permitted to divert the water of the stream. It claims title to the water under a lease from the riparian owner. Such right as he was able to give it, it holds, but it was not more than the right of a riparian owner, and as such it was liable to be appropriated by the water company in proper proceedings. We cannot see that the plaintiff, which never exercised any right of eminent domain in obtaining the water, holds by any better title than its grantor, and we are therefore of opinion that the learned court below did not err in dissolving the injunction and dismissing the bill. We say nothing as to the right of the plaintiff company to compensation for loss of the water to which it may be entitled, as no such question arises on this record.

Decree affirmed and appeal dismissed with costs.