### DELAWARE RIVER BASIN COMMISSION

v.

### BUCKS COUNTY WATER AND SEWER AUTHORITY and City of Philadelphia.

No. 77–2668.

United States District Court,
E. D. Pennsylvania.

July 27, 1979.

---

1250

David J. Goldberg, Princeton, N. J., for plaintiff.

Victor S. Jaczun, Perkasi, Pa., for Bucks County Water & Sewer Authority.

Anthony J. Sciolla, Jr., Asst. City Sol., Philadelphia, Pa., for City of Pennsylvania.

POLLAK, District Judge.

Plaintiff Delaware River Basin Commission (hereinafter, "Commission") is suing Bucks County Water and Sewer Authority (hereinafter, "BWSA") and the City of Philadelphia to impose its charges for water drawn from the Delaware River by Philadelphia and sold to BWSA. Philadelphia has cross-claimed against BWSA for indemnification if it is held liable to the Commission. The Commission has moved for summary judgment against Philadelphia and BWSA, which in turn have cross-moved for summary judgment against the Commission.[1]

## I.

The Commission is an interstate body established under the Delaware River Basin Compact, an interstate compact entered into by New York, New Jersey, Pennsylvania, Delaware, and the United States, and ratified by Congress (75 Stat. 688) pursuant to the Compact Clause of the Constitution, Article I, § 10. The Compact, codified in Pennsylvania at 32 P.S. § 815.101, became effective in 1961. The purpose of the Compact is the management and conservation of water from the Delaware River Basin (the Delaware River and its tributaries).

The Compact authorizes the Commission to impose charges for the use of facilities it owns and operates. Compact § 3.7; 32 P.S. § 815.101(3.7). The Commission may not charge, however, for any water withdrawn from the Basin if the withdrawal "could lawfully have been made without charge on the effective date of the Compact . . ." Compact § 15.1(b).[2] In 1971, the Commission passed Resolution 71–4, authorizing charges for the use of water from the Delaware River Basin. In 1974, the Commission passed Resolution 74–6, Section 5.1–2 of which provides that a charge for water shall be levied against "[a]ny person, firm, corporation or other entity, including a public corporation, body or agency, who shall use, withdraw or divert surface waters of the [Delaware River] basin."[3] Exempted from these charges are those who use, withdraw or divert water "in quantities not exceeding the legal entitlement of the user, determined as of [the effective date of the Compact]." Resolution 74–6, § 5–1.3(a). Section 5–1.3(b)(1) defines "legal entitlement" in the following manner:

1. "Legal entitlement" means the quantity or volume of water expressed in million gallons per month determined by the lesser of the following conditions:

(i) a valid and subsisting permit, issued under the authority of one of the signatory parties, if such permit was required as of October 27, 1961, or thereafter;

(ii) physical capability as required for such taking; or

(iii) the total allocable flow without augmentation by the Commission, using a seven-day, ten-year, low-flow criterion measured at the point of withdrawal or diversion.[4]

1. Philadelphia has not moved for summary judgment on its cross-claim against BWSA.

2. This section does not appear in the Pennsylvania codification because it was added by Congress as a condition of federal participation after Pennsylvania's ratification of the Compact. See generally *Borough of Morrisville v. Delaware River Basin Comm'n*, 399 F.Supp. 469, 474 (E.D.Pa. 1975) (Newcomer, J.) *aff'd per curiam*, 532 F.2d 745 (3d Cir. 1976).

3. Cf. Resolution 74–6, § 5–4.1(b); " 'Water user' means any person who uses, takes, withdraws or diverts surface waters within the Delaware River Basin."

4. Section 5–1.3 of Resolution 74–6 has been held to be a proper implementation of the mandate of Section 15.1(b) of the Compact. *Borough of Morrisville v. Delaware River Basin Commission*, 399 F.Supp. at 474–75. In this opinion, Judge Newcomer persuasively shows

The 1974 Resolution imposed a charge of 4¢ per thousand gallons for surface water consumed by users in the Basin and .04¢ per thousand gallons of surface water taken for nonconsumptive purposes.[5]

In 1966, BWSA and the City of Philadelphia signed an agreement under which Philadelphia was to provide BWSA with 35,000,000 gallons of water per day.[6] This agreement, made before the Commission began charging for water drawn from the Basin, was submitted to the Commission for approval under Section 3.8 of the Compact, 32 P.S. § 815.101(3.8), requiring Commission approval of water projects having "a substantial effect on the water resources of the basin." The Commission's executive director, James F. Wright, responded by letter that no approval was needed under Section 3.8 of the Compact. Philadelphia began delivering water to BWSA in 1970, and has done so continuously since that date, while receiving a stipulated payment.

In late 1976 and early 1977, the Commission wrote to Philadelphia and to BWSA, (a) stating that BWSA had no legal entitlement to any water from the Basin free of the Commission charge, and (b) requesting that Philadelphia or BWSA remit money owed to the Commission under Resolution 74–6 for the water withdrawn by Philadelphia for BWSA's use. Philadelphia responded that the Commission should pursue BWSA, which was actually receiving the water, and that Philadelphia did not wish to act as a "collection agency" for the Commission. BWSA responded that it owed no money to the Commission, because it was buying water from Philadelphia that Philadelphia had been legally entitled to draw from the Basin free of charge on the effec-

tive date of the Compact. The Commission then brought this law suit. The Commission moves for summary judgment, arguing that both defendants are liable to the Commission for the water taken by Philadelphia and sold to BWSA, in that (a) within the meaning of Section 5–1.2 of Resolution 74–6, both defendants "use, withdraw or divert" Delaware River water, and (b) within the meaning of Section 5–1.3 of the Resolution, defendants fell without "the legal entitlement of the user . . ." and hence do not qualify for the exemption from the Commission's water charges mandated by the Compact.

## II.

### A.

The first question to be considered is whether the City of Philadelphia and BWSA "use, withdraw or divert" waters from the Delaware River Basin within the meaning of Section 5.1–2 of Resolution 74–6, supra, and Section 5.4–1(b), supra note 3. Neither defendant, however, seriously contends that it falls without these provisions. In appropriating water from the Delaware River under its contract with BWSA, Philadelphia "withdraws" and "diverts" those waters within the ordinary meaning of those words.[7] And in accepting the water from Philadelphia and distributing it to its customers, BWSA "uses" the water within the ordinary meaning of that word.

### B.

Whether either defendant is exempt from the Commission's charges is, as to both defendants, the same question: Since BWSA acknowledges that neither it nor its predecessors ever enjoyed any independent

---

that Section 15.1(b) of the Compact should not be interpreted to require application of the federal common law doctrine of equitable apportionment developed by the Supreme Court to adjudicate water rights disputes between states.

5. These charges have since been increased to 6¢ and .06¢ respectively, but the increase does not affect this litigation.

6. Similar contracts had been signed between Philadelphia and predecessors of BWSA in 1962 and 1964, but it appears that no water was delivered under those contracts.

7. Philadelphia admits that it withdraws water from the Delaware, but contends that it is merely the conduit by which BWSA obtains water for the use of its customers. Nothing in the Compact or the Resolutions, however, makes Philadelphia exempt from the Commission's charges for this reason.

legal entitlement to draw water from the Delaware, BWSA's claim to exemption, like Philadelphia's, rests on the proposition that, as of the effective date of the Compact (October 27, 1961), Philadelphia had "a valid and subsisting permit, issued under the authority of [Pennsylvania]" (Resolution 74–6, § 5–1.3(b)(1)(i)) to take water from the Delaware in the quantity and for the purpose comprehended by Philadelphia's agreement with BWSA.

The question of quantity is of no moment. Under a permit issued to Philadelphia by the Pennsylvania Department of Forests and Waters in 1955 and still in force, Philadelphia was, as of 1961, authorized to draw 423,000,000 gallons daily from the Delaware. Even including the 35,000,000 gallons drawn for resale to BWSA, Philadelphia's actual taking of Delaware water has never approached that theoretical maximum.[8]

Therefore, the real question is whether the 1955 permit authorizing Philadelphia's massive draw of Delaware River water can be said to have contemplated Philadelphia's resale of such water to outlying municipalities. To answer this question of Pennsylvania law, it is necessary briefly to consider the statutory and common law framework within which the permit system of municipal water allocation developed.

The Pennsylvania Supreme Court's opinion in *Philadelphia v. Philadelphia Suburban Water Co.*, 309 Pa. 130, 163 A. 297 (1932), comprehensively describes the Pennsylvania water allocation system which prevailed until 1939. The paramount rights of water users were those of riparian owners to take for domestic use and of the public to sail on navigable streams.[9] *Id.* at 150, 163

A. at 303 (citing cases). The right of municipalities to take water from rivers for the use of the general population was a creature of statute. See *Id.* at 145–46, 163 A. at 301; *Philadelphia & Reading R. Co. v. Pottsville Water Co.*, 182 Pa. 418, 38 A. 404 (1897); *Haupt's Appeal*, 125 Pa. 211, 17 A. 436 (1889). Philadelphia was explicitly authorized by statute to take water from the Schuylkill. 309 Pa. at 140–42, 163 A. at 299–300. Other municipalities were statutorily authorized to acquire sufficient water for their inhabitants through the power of eminent domain.[10] *Philadelphia & Reading R. Co. v. Pottsville Water Co.*, 182 Pa. at 426, 38 A. at 406 (municipal water company which did not take water rights by eminent domain had no more right to use a stream than any other riparian owner); *Palmer Water Co. v. Leighton Water Supply Co.*, 280 Pa. 492, 124 A. 747 (1924); *Haupt's Appeal, supra.* And, most importantly for the current case,

> While a [municipality] has the power to construct a reservoir and conduct water to its inhabitants, it has no right to furnish the water to persons outside the [municipal] limits.

*Stauffer v. East Stroudsburg Borough*, 215 Pa. 143, 144, 64 A. 411, 411 (1906) (Supreme Court adopting opinion of trial court), citing *Haupt's Appeal*, 125 Pa. at 225, 17 A. 436. Thus, under Pennsylvania law as it stood up to 1939, Philadelphia's entitlement to supply water ended at Philadelphia's borders. *Philadelphia v. Philadelphia Suburban Water Co.*, 309 Pa. at 146, 163 A. at 301.

In 1939, the Pennsylvania Legislature abolished the eminent domain system for municipal water allocation, and vested the allocative authority in a Water and Power

---

8. In a separate administrative proceeding, which has no bearing on this law suit, the Commission staff is asserting that, pursuant to Resolution 74–6, § 5–1.3(b)(1)(iii), Philadelphia's ceiling entitlement is not the 423,000,000 gallons per day of Delaware water specified in the permit, but an assertedly lower quantity reflecting Philadelphia's intake capacity in 1961. But even that lower number is higher than Philadelphia's actual aggregate draw from the Delaware at any time.

Under another permit issued by the Department of Forests and Waters in 1958, Philadelphia is also entitled to draw up to 285,000,000 gallons daily from the Schuylkill.

9. Congress of course retains ultimate authority to regulate navigable waterways, an authority it did not delegate to the Commission. Compact § 1.4, 32 P.S. § 815.101(1.4).

10. Thus, many of the early cases contain discussions of the eminent domain power.

**1254**

Resources Control Board. Act of June 24, 1939, P.L. 842, 32 P.S. 631 *et seq.* In 1955, when Philadelphia's current permit for Delaware River water was issued, the Board was part of the Department of Forests and Waters. See Act of April 9, 1929, P.L. 177, § 202, as amended, 71 P.S. 62 (Main vol. 1962). The powers of the Board have since been vested in the Department of Environmental Resources. Act of December 3, 1970, P.L. 177, § 1901–A, 71 P.S. § 510–1(1) (Supp.1978). The acquisition of any water rights beyond those possessed by a municipality or municipal authority in 1939 must be carried out in accordance with the Act of 1939. 32 P.S. §§ 631, 635. When a municipality or municipal authority applies for new water rights, it must set forth, *inter alia*, "The district, municipality or political subdivision, and the population thereof, requiring the supply, and the necessity for such acquisition." 32 P.S. § 636(3). Under the Act of 1939, the Water and Power Resources Board (now the Department of Environmental Resources) is "[the] single tribunal to determine questions of the appropriation and diversion of water from the streams of the Commonwealth." *Borough of Collegeville v. Philadelphia Suburban Water Co.,* 377 Pa. 636, 648, 105 A.2d 722, 728 (1954). In making such determination, the Board is required to consider whether "the water rights proposed to be acquired are reasonably necessary for the present purposes and future needs of the agency making application therefor . . . ." *Id.*

Whatever the typical practice prior to 1939, it would appear that, under the statute, the Water and Power Resources Board may well have the authority to approve arrangements, such as the one between Philadelphia and BWSA, by which one municipality provides water to users outside its borders. Yet, Philadelphia's application for the 1955 permit states that the district or municipality requiring the supply of water is the City of Philadelphia. It does not suggest that any water to be taken under the permit was to be made available to water suppliers outside Philadelphia. Nor does the 1955 permit suggest that the

Board of Water and Power Resources expected that any water would be so used. Hence, the permit may not be construed as authorizing Philadelphia to divert water from the Delaware River for sale to BWSA.

### III.

BWSA raises several other issues which it asserts require that summary judgment for the Commission be denied.

### A.

■ BWSA contends that the Commission's 1966 approval of the agreement between Philadelphia and BWSA bars the Commission from now imposing a charge for the water sold under the agreement. The contention is without merit.

The 1966 letter was issued as certification that the sale of water from Philadelphia to BWSA did not require review under Section 3.8 of the Compact. At the time the letter was issued, the Commission was making no charge for water drawn from the Basin by any municipal user. A charge for water under Resolution 74–6 is in no sense a disapproval of the project or a rescission of the 1966 letter. Such a charge is simply what it purports to be—a tariff for water taken from the Delaware River Basin, adopted in order to defray the costs of the Commission's activities. The charge may lawfully be imposed unless the taking of water is exempt from charge under the Compact or Resolution 74–6. Neither the Compact nor the Resolution makes imposition of a charge for the use of water depend on whether the particular use will be subject to review under Section 3.8 as having a "substantial effect" upon the water resources of the Basin.

■ Alternatively, BWSA contends that the proper interpretation of the 1966 letter—whether it was simply intended to certify that the Philadelphia-BWSA agreement required no formal Commission approval under Section 3.8 of the Compact, or whether it was also intended to exempt water drawn under the agreement from all potential Commission charges—is a ques-

tion of fact precluding the granting of summary judgment. But the text of the letter deals only with exemption from review under Section 3.8. It does not refer to exemption from charges levied by the Commission under Section 3.7 of the Compact. And the record is barren of extrinsic evidence—by way of affidavit or otherwise—which offers any hint that the letter meant more than it said. Further, no authority has been advanced for the proposition that the Executive Director has authority—or even apparent authority—permanently to preclude the Commission from exercising the comprehensive power, vested in it by the Compact, "from time to time after public notice and hearing [to] fix, alter and revise rates, rentals, charges and tolls and classifications thereof, for the use of facilities which it may own or operate and for products and services rendered thereby . . . ." § 3.7.

### B.

■ BWSA next contends that the Executive Director's failure to ask BWSA to enter into a water use contract pursuant to Section 5–3.2 of Resolution 74–6 precludes the Commission from now seeking to impose a noncontractual water use charge. Section 5–3.2 provides:

*Contracts; Minimum charge.* Subject to the exclusions for certificates of entitlement and exempt uses, the Executive Director may require contracts for any taking, use, withdrawal or diversion of waters of the basin. Each contract shall provide for a minimum annual payment in accordance with an estimated annual demand schedule, regardless of use, withdrawal or diversion. The failure of any person to execute a contract under this section shall not affect the application of other requirements of this resolution.

The language of this section shows that contracts are one way, but not the exclusive way, in which water charges may be imposed on a water user.

11. As opposed to water pollution projects, which may be undertaken both "to control potential pollution and abate or dilute existing pollution." Compact § 5.1, 32 P.S. § 815.-101(5.1).

### C.

■ At oral argument, BWSA advanced the proposition that Section 15.1(b) of the Compact, as implemented by Resolution 74–6, violates federal constitutional principles of equal protection in that it exempts from water use charges those public entities which had water permits before 1961 while imposing charges on later users.

Actually, this characterization of the Compact is not entirely apt. If a municipality possessing a pre-Compact permit seeks to draw water from the Basin beyond that permitted by the permit, the additional taking will be subject to the Commission's water use charge. Part II of this opinion holds Philadelphia liable for just such a charge.

The legislative history does not make clear why Congress chose to add Section 15.1(b) to the Compact. See *Borough of Morrisville v. Delaware River Basin Commission, supra* note 2. But it seems entirely expectable for Congress to have elected to distinguish between uses of Basin waters legally sanctioned as of 1961 and uses which would arise and seek legal sanction in the future. Congress may well have supposed that, broadly speaking, the Delaware River and its tributaries met the water use needs of the region as of 1961, and that most Commission projects aimed at enlarged and more equitable water allocation[11] would be geared to meeting needs developing after the effective date of the Compact. A "grandfather clause" exempting from charges those uses previously validated by state law is a reasonable legislative classification wholly consistent with the principles of equal protection. See *United States v. Maryland Savings-Share Insurance Corporation,* 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970).[12]

### IV.

The Commission's motion for summary judgment is granted against both defend-

12. The conclusion would be the same whether the challenge is addressed to the signatory states, under the explicit equal protection language of the Fourteenth Amendment, or is addressed to the signatory United States, under

ants. The defendants' cross-motions for summary judgment are denied.

The relief sought by the Commission will be granted in major part but not in its entirety. The Commission will be granted monetary relief equal to its charges for water under Resolution 74–6 plus late charges thereunder. The Commission's claim for a penalty, on the ground that BWSA has violated an order of the Commission, pursuant to Section 14.17 of the Compact, is rejected. So too is the Commission's request for a declaratory judgment as to liability for charges imposed by Resolution 74–6; this opinion should suffice as an explanation of the defendants' legal obligation. Nor has the Commission demonstrated a basis in the Compact or in general principles of equity for its requested injunction forbidding Philadelphia from delivering water to BWSA until the latter complies with Resolution 74–6; the legal remedies of the plaintiff here are entirely adequate.

On the expectation that the parties can reach an agreed calculation of the defendants' dollar liability to the Commission, the parties are directed to submit a draft order reflecting that liability.

the capacious reading of Fifth Amendment due process as comprehending equal protection principles. Cf. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).