## Commonwealth v. Emmers, Appellant.

*Constitutional law—Federal constitution—Fourteenth Amendment— Equal protection of the laws—Waters—Sewerage Act of April 22, 1905, P. L. 260.*

The Act of April 22, 1905, P. L. 260, entitled "An Act to preserve the purity of the waters of the state for the protection of the public health," does not in its fourth, eighth, ninth, tenth and eleventh sections, relating to the discharge of sewerage into the waters of the state, violate the fourteenth amendment of the constitution of the United States which declares that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The act is not obnoxious to the constitutional provision, because it permits water from coal mines, or tanneries, and the sewerage from any public sewer system owned and maintained by a municipality, provided such sewer system was in operation and was discharging sewerage into any of the waters of the state at the time of the passage of the act, to

continue to flow into the waters of the state, while forbidding individuals, private corporations and companies to discharge into the waters of the state sewerage of the character designated by the act.

The alleged right of a riparian owner to pollute the waters of a stream which flows over his land, or along the boundary thereof, is not among the privileges and immunities which belong to him as a citizen of the United States, as distinguished from those of a citizen of the state in which the land and the stream are situated; nor is such alleged right a right of property of which he is deprived by the acts of 1905 "without due process of law." A person aggrieved by the action of the commissioner of health has a right to appeal to the court of common pleas, and thus secure the protection of the "due process of law," within the constitutional provision.

The classification of sewerage as different from water flowing from coal mines, and also as different from water flowing from tanneries, is a question for the legislature, and the courts can only inquire whether such classification is founded in substantial distinctions having a reasonable relation to the subject-matter of the legislation.

The classification adopted by the Act of April 22, 1905, P. L. 260, as to the character of the sewerage prohibited and that exempted from the provisions of the act is founded upon substantial and material distinctions, and is one which it is within the discretion of the legislature to make. The distinction drawn by the act between public sewer systems, owned and operated by municipalities, and sewers controlled by individuals and private corporations, is equally well founded.

The power of a state, since the adoption of the fourteenth amendment, to enact a police regulation, for the protection of the public welfare, which restricts a noisome business or condition to certain districts, and reserves to the state or its representatives, the right to regulate and control such business is not within the prohibition of the amendment. The privilege of discharging obnoxious sewerage into the waters of the state is a matter of public concern, and it is within the police power of the state to declare that this privilege is one which ought not to be exercised by private individuals, but only by the state or its governmental agents, the municipalities, acting under the direct control of the state.

*Constitutional law—Local or special legislation—Act of April* 22, 1905, *P. L.* 260.

The Act of April 22, 1905, P. L. 260, forbidding the deposit of sewerage in the waters of the commonwealth, does not violate that clause of article III, sec. 7 of the constitution of Pennsylvania which declares that the general assembly shall not pass any local or special law "granting to any corporation, association, or individual any special or exclusive privilege or immunity." Municipal corporations do not come within this particular clause of the section, but are within the operation of the clause which relates to them specially and forbids the passing of

any local or special law, "Regulating the affairs of counties, cities, townships, wards, boroughs or school districts."

Argued Nov. 12, 1906.   Appeal, No. 206, Oct. T., 1906, by defendant, from judgment of Q. S. Montgomery Co., June T., 1906, No. 42, on verdict of guilty in case of Commonwealth v. Edward Emmers.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Indictment for discharging sewerage into the Schuylkill river. Before SWARTZ, P. J.

At the trial the jury returned a verdict of guilty, upon which judgment of sentence was passed.

The only question involved was the constitutionality of the Act of April 22, 1905, P. L. 260.

*Error assigned* was in refusing to arrest the judgment.

*Henry Freedley*, with him *E. L. Hallman*, for appellant, cited: Connolly v. Pipe Co., 184 U. S. 540 (22 Sup. Ct. Repr. 431); Com. v. Sellers, 130 Pa. 32; Davis v. Clark, 106 Pa. 377.

*L. J. Palmer* and *Hampton L. Carson*, attorney general, with them *R. H. Innes*, *P. S. Williams* and *C. S. Sheive*, district attorney, for appellee.

OPINION BY PORTER, J., February 25, 1907:

The defendant was indicted and convicted, under the provisions of the Act of April 22, 1905, P. L. 260, entitled " An act to preserve the purity of the waters of the state, for the protection of the public health," of the offense of discharging sewerage into the Schuylkill river.   The specifications of error raise but two questions.   Does the statute under which the defendant was convicted violate the fourteenth amendment of the constitution of the United States, which declares that " No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law ; nor deny to any person within its jurisdiction the equal protection of the laws?"   Does the statute contravene section 7, article III., of the constitution of

Pennsylvania, which prohibits the legislature from passing any local or special law, "granting to any corporation, association or individual any special or exclusive privilege or immunity?"

The first section of the statute in question defines the term "waters of the State," whenever used in this act, as including "all streams and springs, and all bodies of surface and ground water, whether natural or artificial, within the boundaries of the State." The second section requires every municipality, private corporation, company and individual, supplying or authorized to supply water to the public, within the state, to file with the commissioner of health a certified copy of the plans and surveys of the waterworks, and a description of the source from which the supply of water is derived; and forbids the subsequent use of any additional source of supply, without a written permit from the commissioner of health. The third section forbids any municipal corporation, private corporation, company, or individual to construct waterworks for the supply of water to the public, or extend the same, without a written permit to be obtained from the commissioner of health, if, in his judgment, the proposed source of supply appears to be not prejudicial to the public health; this section provides for the filing of an application for the permit, to construct or extend such waterworks, with a description of the source from which it is proposed to derive the supply, and gives to the applicant, in case the commissioner of health shall refuse the permit, the right to appeal, within thirty days, to the court of common pleas of the county, which court shall, after a hearing, make an order approving, setting aside, or modifying the decision of the commissioner of health, or fixing the terms upon which said permit shall be granted.

The sections of the statute upon which the learned counsel for the appellant bases his argument that the act offends against the constitution of the United States and the constitution of the state of Pennsylvania are as follows: "Section 4. No person, corporation, or municipality shall place, or permit to be placed, or discharge, or permit to flow into any of the waters of the state, any sewerage, except as hereinafter provided. But this act shall not apply to waters pumped or flowing from coal mines or tanneries, nor prevent the discharge of sewerage from any public sewer system, owned and maintained by a

municipality, provided such sewer system was in operation and was discharging sewerage into any of the waters of the state at the time of the passage of this act. But this exception shall not permit the discharge of sewerage from a sewer system which shall be extended subsequent to the passage of this act. For the purposes of this act, sewerage shall be defined as any substance that contains any of the waste products, or excrementitious or other discharges from the bodies of human beings or animals." " Section 8. All individuals, private corporations, and companies that, at the time of the passage of this act, are discharging sewerage into any of the waters of the state may continue to discharge such sewerage, unless in the opinion of the commissioner of health the discharge of such sewerage may become injurious to the public health. If at any time the commissioner of health considers that the discharge of such sewerage into any of the waters of the state may become injurious to the public health, he may order the discharge of such sewerage discontinued." " Section 9. Every individual, private corporation, or company shall discontinue the discharge of sewerage into any of the waters of the state, within ten days after having been so ordered by the commissioner of health." The tenth section makes it a misdemeanor, punishable by fine or imprisonment, or both, to discharge sewerage into the waters of the state contrary to the provisions of this act. " Section 11. Any order or decision, under this act, of the commissioner of health, or that of the governor, attorney general and commissioner of health, shall be subject to an appeal to the court of common pleas of the county wherein the outlet of such sewer or sewer system, otherwise prohibited by this act, is situated ; and the said court shall have power to hear said appeal, and may affirm or set aside said order or decision, or modify the same, or otherwise fix the terms upon which the permission shall be granted. But the order or decision appealed from shall not be superseded by the appeal, but shall stand until the order of the court, as above."

The defendant is the owner and operator of a hosiery mill, situated on or near the bank of the Schuylkill river, in Montgomery county, where he employs from 150 to 200 men and women. There are in the mill nine water-closets, for the use of these employees, the sewerage from all of which is by a

single pipe conducted from the mill and flows into the waters of the Schuylkill river. This condition existed at the time the statute in question became a law, and the commissioner of health, on February 9, 1906, served upon the defendant a notice that this discharge of sewerage was injurious to the public health, and requiring that the same be discontinued within ten days, as provided by the eight and ninth sections of the statute. The defendant neither abated the nuisance nor appealed from the decision of the commissioner to the court of common pleas, as under the provisions of the statute he had the right to do, and, under the provisions of this statute, the discharge of such sewerage into the Schuylkill river became, after the expiration of ten days, unlawful. The only question is whether this statute is a valid exercise of legislative power. The appellant contends that because the statute permits water from coal mines or tanneries and the sewerage from any public sewer system owned and maintained by a municipality, provided such sewer system was in operation and was discharging sewerage into any of the waters of the state at the time of the passage of the act, to continue to flow into the waters of the state, while forbidding individuals, private corporations and companies to discharge into the waters of the state sewerage of the character designated by the act, the law is obnoxious to the constitutional provisions.

The only alleged privilege or immunity of the appellant with which the statute in question could possibly interfere is that of discharging sewerage from his land into a stream which constitutes one of its boundaries. The right of the defendant to navigate the waters of the state remains unabated. His right to use the water to supply the natural wants of those lawfully upon the land, or to consume it for manufacturing purposes is not affected by this legislation. The alleged right of a riparian owner to pollute the waters of a stream which flows over his land or along the boundary thereof is not among the privileges and immunities which belong to him as a citizen of the United States, as distinguished from those of a citizen of the state in which the land and the stream are situated. This statute does not, therefore, fall within the prohibition of the first clause of fourteenth amendment of the constitution of the United States, which declares that " No state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States: " Slaughter House Cases, 83 U. S. 36; Bradwell v. Illinois, 83 U. S. 130; Giozza v. Tiernan, 148 U. S. 657; Commonwealth v. Finn, 11 Pa. Superior Ct. 620.

The appellant does not contend that this act violates the second clause of the fourteenth amendment which provides that "nor shall any state deprive any person of life, liberty, or property, without due process of law" and it is manifest that such contention could not, if made, be sustained. The ownership of riparian lands does not involve the ownership of the waters which flow over or along the margin of such lands. The owner of the land has a right to use the water for certain lawful purposes and this right is a natural one, inherent in the ownership of the land, but he can in no sense be said to have an absolute ownership of the water, as such. He has a right to the ordinary use of the water of the stream for the purpose of supplying the natural wants, for such things as are necessary to the preservation of life and health, of those occupying the land, even if such uses result in a substantial diminution of the stream. His right to use the water of the stream for manufacturing or other purposes, having no necessary relation to the use of his land, is limited to so much of the water as will not materially or sensibly diminish its quantity: Haupt's Appeal, 125 Pa. 211; Lord v. Meadville Water Company, 135 Pa. 122; Railroad Company v. Pottsville Water Company, 182 Pa. 418; Filbert v. Dechert, 22 Pa. Superior Ct. 362. The riparian owner must permit the water to flow, subject to the diminution of its quantity resulting from these reasonable uses, in its natural channel, unpolluted, to lower riparian owners, who take it subject to the same rights and the same restrictions. The erection of anything in the upper part of a stream of water, which poisons, corrupts or renders it offensive and unwholesome, is actionable: Howell v. McCoy, 3 Rawle, 256; Wheatley v. Chrisman, 24 Pa. 298; McCallum v. Germantown Water Company, 54 Pa. 40; Commonwealth ex rel. v. Russell, 172 Pa. 506. When, in the development of the natural resources of the land, the water from a mine must necessarily and unavoidably pass into a stream, and that consequence could only be avoided by an expenditure which would amount to a practical prohibition of the development of the land, the injury to a lower

riparian owner resulting from such unavoidable mixture of the water of the mine with that of the stream is a private injury for which there is no remedy : Pennsylvania Coal Company v. Sanderson, 113 Pa. 126, but whether this extreme exception to the general rule that a riparian owner has no right to pollute the waters of a stream could prevail against the right of the public is an entirely different question : Commonwealth ex rel. v. Russell, supra. There can, however, be no question in the present case. The pollution caused by the defendant did not result from the development of any natural resources of his land, nor was it unavoidable. He never had a right, recognized by law, to discharge sewerage, of the character shown in this case, into the stream which flowed past his land ; he had, it is true, continued the practice for fourteen years, but it was from first to last a wrongful act and he took the chances of having to answer for its consequences. Had the practice resulted in an injury to a lower riparian owner the wrong would have been a private one, for which the individual or individuals injured might have had redress by action, if the public had a right to take from this stream pure and unpolluted water for drinking purposes, and found in it the germs of disease, coming from this sewer of the defendant, his offense would be a public one, for which he could be indicted and punished, at common law : Commonwealth v. Yost, 197 Pa. 171. The defendant was not, prior to the enactment of this statute, possessed of a right of property, in the privilege of discharging this sewerage into the stream, recognized by law. He was not, therefore, deprived of " liberty or property," within the meaning of the second clause of the fourteenth amendment. But even if the defendant had a property right in the privilege of discharging sewerage into the stream, he was not by this statute deprived of that right " without due process of law." The statute provided that the defendant, because he had been so discharging sewerage prior to the approval of the act, should be permitted to continue the practice until, " in the opinion of the commissioner of health, the discharge of such sewerage may become injurious to the public health;" that upon notice of such decision by the commissioner of health the defendant should discontinue the discharge of sewerage within ten days, and that after that period the discharge of such sewerage should be un-

lawful.	The commissioner of health is a sworn official, and it is presumed that, under his oath of office, his duties as the representative of the commonwealth will be properly performed. The delegation by the legislature to a state officer of the power to determine some fact or state of things upon which the law makes its own action depend, is not an unwarranted delegation of legislative power: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355. The law imposes upon the officer in question the duty of enforcing the health laws of the commonwealth, and this statute clothes him with the power and imposes upon him the duty of ascertaining whether any sewer, maintained by an individual, company or private corporation, is discharging into the waters of the commonwealth material which is a menace to the public health. The act does not make the decision of this officer final, it gives the defendant the right of an appeal to the court of common pleas, a constitutional tribunal clothed with full law and equity powers, and gives him in that court an opportunity to be heard, upon the question whether or not the sewer so maintained involves danger to the public health. The statute placed at the disposal of the defendant this process of law to have determined in a court of competent jurisdiction the primary question, whether the material which he was discharging into the stream had become a menace to the public health ; and before he could be convicted of the offense created by the statute he was entitled to a trial in the court of quarter sessions, a court of record in which all misdemeanors are triable, and the burden was upon the commonwealth to establish that he had discharged sewerage into the stream, after the fact that such discharge involved a menace to the public health had been determined in the manner by the statute provided. The fourteenth amendment is not to be so construed as to deprive the states of the power to so amend their laws as to make them conform to the wishes of citizens, as they may deem best for the public welfare, without bringing them into conflict with the supreme law of the land; this power of change is limited by the fundamental principles laid down in the constitution. " Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state : " Walker v. Sauvinet, 92 U. S. 90. The statute afforded the defendant a full and fair opportunity to have tried in a court of

competent jurisdiction every question that arose, at the various stages of the proceedings, leading up to his conviction. The statute afforded to every individual, private company and corporation the same opportunity for a trial, under like conditions, in every case ; and there can in this case be no allegation that the courts have denied any right which the statute conferred. The conviction of the defendant resulted from due process of law: Holden v. Hardy, 169 U. S. 366.

Does the statute contravene the provisions of the third clause of the fourteenth amendment "No state shall . . . . deny to any person within its jurisdiction the equal protection of the laws"? The appellant contends that the act of 1905 conflicts with this provision of the constitution of the United States, for the reason that it permits "water pumped or flowing from coal mines or tanneries, and sewerage from any public sewer system, owned and maintained by a municipality, provided such sewer system was in operation and was discharging sewerage into any of the waters of the State at the time of the passage of this act," to continue to be discharged into the waters of the state, provided that no such sewer system be extended subsequently to the passage of the act. The statute was passed in the exercise of the police power of the state. That power undoubtedly extends to all regulations affecting the health, good order, morals, peace, and safety of society. All sorts of restrictions and burdens are imposed under this power, and when these are not in conflict with any constitutional prohibition, or fundamental principle, they cannot be successfully assailed in a judicial tribunal. That the preservation of the waters of the state from pollution, involving danger to health, is a proper subject for the exercise of the police power, cannot be seriously questioned. Proceeding to an examination of the subjects excepted out of the operation of the statute, which exceptions the defendant asserts involve a denial of the equal protection of the laws, to those not within the exceptions, we must inquire whether the exceptions are founded upon substantial distinctions, having reasonable relation to the subject-matter of the statute. That there might be no question as to the kind of sewerage that the legislature intended to forbid individuals, companies and private corporations from discharging into the waters of the state,

when it had been determined, in the manner provided by the statute that such discharge had become dangerous to the public health, the statute embodied a specific definition in these words, "Sewerage shall be defined as any substance that contains any of the waste products, or excrementitious or other discharges from the bodies of human beings or animals." The exception of water flowing from coal mines was unnecessary, such water does not naturally contain any of the ingredients of sewerage as defined by the statute. The water flowing from a coal mine may contain sulphate of iron, sulphate of lime or other chemicals in solution, which would make it unpleasant for drinking purposes, and perhaps injurious to health, but it could not contain the specific germs of those diseases which sometimes abound in sewerage of the character defined by the statute. Should the water from a coal mine be mixed with sewerage of the kind prohibited, the compound would no longer be within the exception, but would come within the prohibition of the statute. The same rule is to be applied to water flowing from tanneries. Such waters would undoubtedly be offensive to both taste and smell, but the only waste products of animals which they would carry would be such as appertained to the hides. Those waste products have been long immersed in and saturated with chemical solutions, which give to them a character essentially different from the waste products of a slaughter house or the excretions of human beings. The waters flowing from the tannery are only within the exception so long as they remain unmixed with other materials. Whether the processes employed in the tanning of hides would, if applied to sewerage of the kind to which this statute applies, result in the destruction of the germ life with which it is asserted by science that the dejecta of human beings sometimes abounds, it is not for us to affirm nor deny. One has been subjected to a prolonged process in which powerful chemicals are made use of, and the other has not been subjected to such a process. It is not for the court to determine whether the classification adopted by the legislature was wise or unwise; we are only to inquire whether it is founded in substantial distinctions having some reasonable relation to the subject-matter of the legislation. "While the police power cannot be put forward as an excuse for oppressive and unjust

legislation, it may be lawfully resorted to for the purpose of preserving the public health, safety or morals, or the abatement of public nuisances, and a large discretion is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests : " Holden v. Hardy, 169 U. S. 366 ; Lawton v. Steele, 152 U. S. 133.   What is necessary for the protection of the public health is primarily a legislative question.   Whether the introduction of sewerage, of the kind prohibited by the statute, into the waters of the various streams of the commonwealth by private individuals, companies or corporations, could be conducted in such a way, or with such secrecy, as to baffle ordinary inspection, or whether it involves such dangers to the public health as to require, for the protection of the people, the entire suppression of the business, rather than its regulation in such manner as to permit the discharge of such sewerage as does not involve danger to the public health, are questions of fact and of public policy, which belong to the legislative department of the government : Powell v. Pennsylvania, 127 U. S. 678.   The question in each case is whether the legislature has adopted the statute in the exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression, or spoliation of a particular class.   " From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains.   Special burdens are often necessary for general benefits—for supplying water, preventing fires, lighting district, cleaning streets, opening parks and many other objects.   The regulations for these purposes may press with more or less weight upon one than upon another, but they are designed not to impose unequal or unnecessary restrictions upon anyone, but to promote with as little individual inconvenience as possible the general good, though, in many respects, necessarily special in their character, they do not furnish just ground for complaint, if they operate alike upon all persons and property, under the same circumstances and conditions.   Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in

its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment:" Barbier v. Connolly, 113 U. S. 27. The exemption of the water discharged from tanneries, which must be construed as including only the liquid resulting from the operation of tanning without the admixture of such sewerage as is prohibited by the statute, involved only a classification of the kind of sewerage with which the legislation dealt. It did not exempt the tanner from liability to answer to any lower riparian owner for any injury which the discharge of the water from the tannery might cause, nor did it exempt him from prosecution under the law as it formerly existed in case the discharge of the waters from his tannery became a public nuisance. The exemption was not limited to then existing tanneries, but this defendant or any other person who hereafter engages in the tanning business is entitled to its protection, to the extent that it is not affected by this statute in any manner whatever.

The classification adopted by the statute, as to the character of the sewerage prohibited and that exempted from the provisions of the act, was founded upon substantial and material distinctions, and was one which it was within the discretion of the legislature to make.

When we consider all the circumstances involved, the distinction drawn by the statute between public sewer systems, owned and operated by municipalities, and sewers controlled by individuals and private corporations, would seem to be equally well founded. A municipality is a governmental agent, and, although its existence is dependent upon the legislative will, while it exists it represents, within its sphere, the sovereign power of the state. The public sewer systems owned and maintained by the municipalities of the state have been constructed at the public expense and under express legislative authority. The necessity of providing some system of house drainage and of general sanitation for densely populated cities, and of providing for the inspection, regulation and control of those matters by the state or the municipalities, as the representatives of the state, in the interest of the public health, had imperatively demanded the exercise of the police power of the state, and in the exercise of that power the legislature had authorized the construction of these public sewer systems. Any

person whose property suffers an injury because of the discharge of such public sewer systems into the waters of the commonwealth is, under the law of the state, entitled to compensation for such injury: Good v. Altoona, 162 Pa. 493. The statute with which we are now dealing does not deprive the private owner of that right to compensation for injury to his property. These public sewer systems and the house drains which lead into them have by the legislation of the state been made subject to the regulation, inspection and control of the municipalities, and the duty of exercising such supervision has been imposed upon the municipal authorities. Density of population has been recognized as a proper basis for the classification of communities with regard to the necessity for and regulation of house drainage. " In its nature it is a definition and regulation of the police power on a subject which is one of municipal concern. All the cases agree that such subjects are the principal basis of the legitimate classification of cities. That the control and regulation of cesspools and drainage in general are more important and require different conditions in closely built up neighborhoods from those sufficient for the open country does not need discussion. And for the same reasons the regulations may require to be different in cities of different volume and density of population. . . . The subject being one which is germane to the proper basis of classification its regulation and application to one or more classes are within the legislative discretion: " Beltz v. Pittsburg, 26 Pa. Superior Ct. 66; s. c., 211 Pa. 561. This necessity for house drainage, under state inspection, regulation and control, in densely populated communities, was one of the elements of the problem which confronted the legislature when in the exercise of its discretion it determined that a necessity had arisen for the exercise of the police power to preserve the purity of the waters of the state, for the protection of the public health. If, as contended by the appellant, the only solution of the problem was to prohibit the discharge of all sewerage, under any conceivable circumstances and conditions, into the waters of the state; then the legislature had no discretion to frame an act which would, without unnecessary oppression of any individual, impose regulations to guard the public health against one source of danger, unless it at the same time deprived the inhabitants

of all densely populated communities of reasonable protection against another source of danger to the public health. Such a construction of the fourteenth amendment would deprive the states of all power to make police regulations necessary to meet the varying needs and dangers of the different districts and communities within their borders. The most densely populated city in the commonwealth could not be permitted to discharge its sewerage into an estuary of the sea, unless at the same time all owners of riparian lands, from where the waters of the state have their origin in mountain rivulets to where, as rivers, they meet the tides of the ocean, were permitted, without state inspection, control or regulation, to pollute the waters for their own private profit. This contention of the appellant cannot be sustained. The authority of a state to make police regulations, to provide for the health of those residing in the different districts subject to its jurisdiction and to classify those districts according to the widely varying circumstances and conditions therein prevailing, so long as that classification is based upon conditions having a substantial and reasonable relation to the general subject-matter of the regulation, cannot be questioned, and such classification is not within the prohibition of the fourteenth amendment of the constitution of the United States. "The question in each case is whether the legislature has adopted the statute in the exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression, or spoliation of a particular class:" Holden v. Hardy, 169 U. S. 366; Barbier v. Connolly, 113 U. S. 27.

The power of a state, since the adoption of the fourteenth amendment, to enact a police regulation, for the protection of the public welfare, which restricts a noisome business or condition to certain districts, and reserves to the state, or its representative, the right to regulate and control said business, is not within the prohibition of the amendment: Slaughter House Cases, 83 U. S. 36. The privilege of discharging obnoxious sewerage into the waters of the state is a matter of public concern, and it was within the police power of the state to declare that this privilege was one which ought not to be exercised by private individuals, but only by the state, or its governmental agents, the municipalities, acting under the direct control of

the state. That the state reserved to itself a privilege, which it denied to individual citizens, did not deprive this appellant, or any other person, of the equal protection of the laws. This statute requires every individual, corporation, or municipality supplying the public with water to file in the office of the health department of the state a statement of its source of supply. It requires every municipality which, at the time of the adoption of the statute, was maintaining a system of sewerage, to file in that department a plan thereof. These provisions necessarily result in making a matter of public record, in the office of the commissioner of health, the sources from which the public water supply of every community in the state is taken, and a like record of every opening of a public sewer system into the waters of the state. Should an epidemic develop in any community, the health authorities immediately have accurate information as to the source from which the public water supply of that community is derived, and whether any public sewer system is discharged into that water. The state legislation requiring physicians in municipalities to make reports to the health authorities of all cases of disease, will place at the disposal of the commissioner of health information as to the health conditions existing in the municipalities using the various public sewer systems. The commissioner of health and officers under his control will thus constantly have a large part of the information necessary to deal with the health conditions of any community.

The contention that this statute violates that clause of article III., sec. 7, of the constitution of Pennsylvania, which declares that, the general assembly shall not pass any local or special law; "granting to any corporation, association, or individual any special or exclusive privilege or immunity," cannot be sustained. Municipal corporations do not come within this particular clause of the section, but are within the operation of the clause which relates to them specially and forbids the passing of any local or special law ; " Regulating the affairs of counties, cities, townships, wards, boroughs or school districts." Municipal and quasi-municipal corporations are the agents of the state, authorized to perform such governmental duties as are by the state delegated, and there must be, from the very nature and purpose of their organization, delegated to them

governmental powers, such as those of taxation and police, which it would be manifestly improper to delegate to an individual or private corporation. This is clearly recognized by this section of the constitution, which places them in a distinct clause and constitutes them a class by themselves. Legislation which confers upon municipalities powers and privileges, properly relating to municipal affairs, while denying such powers to individuals and private corporations, does not violate that provision of the constitution of the state which the appellant seeks to invoke : Commonwealth v. Vrooman, 164 Pa. 306 ; Clark's Estate, 195 Pa. 520.

The judgment is affirmed and it is ordered that the defendant appear in the court below to the end that the sentence be carried into effect.