Commonwealth of Pennsylvania Water and Power Resources Board, Appellant, *v.* Green Spring Company.

2 

Argued May 28, 1958. Before Jones, C. J., Bell, Musmanno, Arnold, Jones and Cohen, JJ.

 reargument refused November 5, 1958.

*Thomas D. McBride,* Attorney General, with him *Wanda P. Chocallo,* Assistant Attorney General, for appellant.

*William W. Caldwell,* with him *Mark E. Garber, Sr., Thomas D. Caldwell, Sr.,* and *Garber & Garber,* and *Caldwell, Fox & Stoner,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, October 9, 1958:

The Water and Power Resources Board of the Commonwealth of Pennsylvania (herein termed the Board)[1] instituted an equity action in the Court of Common

---

[1] An administrative Board of the Department of Forests and Waters, an administrative department of the Commonwealth.

Pleas in Cumberland County wherein it was alleged that the Green Spring Company, Inc.—a fish hatchery in Cumberland County—without the Board's consent or permit had increased by seventeen inches the height of a pre-existing water obstruction or dam across a non-navigable stream flowing through its land. The Board sought two-fold injunctive relief: that the Green Spring Company, Inc., be directed to remove so much of the dam as had been added to the pre-existing dam and be enjoined from interfering with the natural flow of the stream as it existed prior to the date when the dam height was increased. Green Spring Company, Inc. filed preliminary objections raising, inter alia, the question of the constitutionality of the "Water Obstruction Act",[2] the basic authority for the Board's action. The Court below sustained the preliminary objections and held that the Act violated the Constitution of Pennsylvania in that it constituted an unlawful delegation of legislative authority. The Commonwealth then took this appeal.

The sole issue herein presented is whether the "Water Obstruction Act" which confers upon the Board the power and authority to grant, or withhold consent for, a permit to construct a dam or water obstruction is in violation of Article II, §1, of the Constitution of Pennsylvania as an unlawful delegation of legislative power.

Article II, §1, of the Constitution of Pennsylvania provides: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives". The Court below summarized the "Water Obstruction Act": "The Act of June 25, 1913, P. L. 555, (32 PS §682) known as the Water Obstruction Act, in Sec-

---

[2] Act of June 25, 1913, P. L. 555, as amended by the Act of May 6, 1937, P. L. 559, 32 PS §681 et seq.

tion 2 thereof, provides that it shall be unlawful for any person, etc., to construct any dam or other water obstruction, or to make or construct any change therein or addition thereto, or to make any change in or addition to any existing water obstruction, etc., without the consent or permit of the Water and Power Resources Board, in writing, previously obtained, upon written application to said Board therefor. Section 3 provides that each application for the consent or permit required by Section 2 shall be accompanied by complete maps, plans, profiles and specifications of such water obstruction and such other data and information as the Board may require. Section 4 gives the Board the power to grant or withhold such consent or permit, or to incorporate in such consent or permit such conditions, regulations and restrictions as may be deemed by it advisable, and makes it unlawful to construct any water obstruction or to make any change or addition thereto except in accordance with the conditions or restrictions of such consent or permit, and such rules and regulations as may be prescribed by the commission. Section 7 makes it a misdemeanor to do any act or thing contrary to the provisions of the Act or to violate or fail to comply with any order of the Board, and Section 8 provides for the issuance of injunctions to enforce compliance with, or to restrain violations of, any order or notice of the commission made pursuant to the Act, or to restrain the violation of any of the provisions of the Act."

In *Archbishop O'Hara's Appeal,* 389 Pa. 35, 47, 48, 131 A. 2d 587, we have recently said: "A fundamental principle of our constitutional law is that the power conferred upon a legislature to make laws cannot be delegated by that branch of government to any other body or authority: Cooley's Constitutional Limitations, p. 224 (8th ed.); United States v. Shreveport Grain

& Elevator Co., 287 U. S. 77, 53 S. Ct. 42; Baldwin Township Annexation Case, 305 Pa. 490, 158 A. 272; American Baseball Club v. Phila., 312 Pa. 311, 167 A. 891; Holgate Bros. Co. v. Bashore, 331 Pa. 255, 200 A. 672; Bell Telephone Co. of Penna. v. Driscoll, 343 Pa. 109, 21 A. 2d 912; Kellerman v. Philadelphia, 139 Pa. Superior Ct. 569, 13 A. 2d 84. While the legislature cannot delegate the power to make a law, it may, where necessary, confer authority and discretion in an administrative tribunal in connection with the execution of the law: Belovsky v. Redevelopment Authority, 357 Pa. 329, 342, 343, 54 A. 277. However, such authority and discretion may not be conferred by the legislature except under the limitations of a prescribed standard or standards under which the authority and discretion are to be exercised: U. S. v. Chicago, Milwaukee, St. Paul & Pacific Railroad, 282 U. S. 311, 51 S. Ct. 159; Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241; Taylor v. Moore, supra; Holgate Bros. v. Bashore, supra; Devereux Foundation, Inc. Zoning Case, supra; Root v. Erie Zoning Board, 180 Pa. Superior Ct. 38, 42, 118 A. 297."[3]

The Court below was of the opinion that the Water Obstruction Act lacked definite standards, policies and limitations by which the action of the Board could be governed and, in the absence of such standards, poli-

---

[3] The following standards have been held adequate: "just and reasonable" (*Tagg Bros. & Moorhead v. United States*, 280 U. S. 420, 50 S. Ct. 220) ; "public interest" (*New York Central Securities Corp. v. U. S.*, 287 U. S. 12, 53 S. Ct. 45) ; "public convenience", "interest" or "necessity" (*Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co.*, 289 U. S. 266, 53 S. Ct. 627). See also: *Breinig v. Allegheny County*, 332 Pa. 474, 2 A. 2d 842; *Annenberg v. Roberts et al.*, 333 Pa. 203, 2 A. 2d 612; *Bell Telephone Co. of Penna. v. Driscoll*, supra; *Marshall Impeachment Case*, 363 Pa. 326, 69 A. 2d 619; *Kellerman v. City of Philadelphia*, supra; *Commonwealth v. Franklin*, 172 Pa. Superior Ct. 152, 92 A. 2d 272.

cies or limitations, the statute constituted an unconstitutional delegation of legislative power to the Board.

In passing upon the validity of this statute, certain well-established principles are pertinent: (1) "Nothing but a clear violation of the Constitution will justify the judiciary in nullifying a legislative enactment. Every presumption must be indulged in its favor, and one who claims an Act is unconstitutional has a very heavy burden of proof [citing cases]": *Loomis v. Philadelphia School District Board,* 376 Pa. 428, 431, 103 A. 2d 769; (2) the fact that this statute has remained on the statute books unassailed for many years does not in itself justify a Court in reaching an interpretation favorable to its validity for "old age cannot give it life": *Kucker v. Sunlight Oil & Gas Company,* 230 Pa. 528, 533, 79 A. 747; *Flynn et al. v. Horst et al.,* 356 Pa. 20, 30, 51 A. 2d 54; (3) if the statutory language be of doubtful import the statute in its entirety and all its provisions must be considered: *U. S. ex rel. Attorney General v. Delaware and Hudson Company,* 213 U. S. 366, 53 L. Ed. 836; *Archbishop O'Hara's Appeal,* supra; (4) in determining a statute's validity we must look to its purpose, its nature and its reasonable effect; we are not limited to the mere letter of the law but must look beyond the letter to determine its true purpose and effect.

The expressed purpose of the "Water Obstruction Act" set forth in its title, is "the regulation of dams, or other structures or obstructions . . . in, along, across, or projecting into all streams and bodies of water wholly or partly within, or forming part of the boundary of, this Commonwealth". Section 2 prohibits the construction of a dam or the addition to or alteration of an existing dam without the Board's consent, the Board consisting of the Secretary of the Department of Forests and Waters, the Secretary of the

Department of Health, the Executive Director of the Fish Commission, a member of the Public Utility Commission, and an engineer. For the guidance of this Board Section 3 provides that "maps, plans, profiles and specifications of such water obstruction" and "such other data and information as the [Board] may require" must be given to the Board by the petitioner for the permit. Section 4 authorizes the Board to make regulations in regard to the construction of, additions to or alterations of any water obstruction while Section 5 authorizes the Board to examine water obstructions and provides that if it "shall determine that such dam or water obstruction is *unsafe or needs repair . . . or for any reason is derogatory to the regimen of* the stream"[4] the Board can force the unsafe conditions to be remedied. (Emphasis supplied). Section 6 provides "if the condition of any dam or other water obstruction be *so dangerous to the public safety* as not to permit of the giving of the notice . . . to remove such dangerous condition" the Board is empowered to remedy the situation itself and place the costs on the owners of the water obstruction. (Emphasis supplied). Section 7 provides penalties for violations of the statute; Section 8 gives the Board recourse to the courts for the enforcement of its decisions; Section 9 excepts from the statute's operation a dam or obstruction on a purely private stream having a drainage area of less than one-half square mile that *"cannot in any way imperil life or property located below or above such dam or obstruction"*. (Emphasis supplied).

In concluding that the statute was invalid, the Court below stated: "There is nothing in the Act to

---

[4] "Regimen" is the "regular course of any continuous natural process; as, the regimen of a river": Merriam-Webster New International Dictionary (2nd ed.) p. 2097.

guide the Board in its determination of whether consent should be given, or what conditions, regulations or restrictions should be imposed in granting consent. Not even the purpose of the Act is indicated. Was it intended to protect the lives and property of upper and lower riparian owners, or to protect the fish life in the stream, or to conserve the water of the stream or was there some other purpose? Even a mere statement of the object sought to be obtained by the statute would give the Board some basis for its determination, but in this statute there is no guide whatever". With these conclusions of the learned Court below we cannot agree.

The statute's title, as amended, is declarative of its object: the regulation of dams and other obstructions and of any changes that in any manner diminish the course, current or cross-section of the streams and rivers of the Commonwealth. Why was such regulation necessary? The answer is to be found not in any single section of the statute, but from an examination of the statute in its entirety. Sections 5 and 6 of the original statute emphasize the safety of the stream or river obstruction from the standpoint of danger to the lives or property of the public as the criterion by which the obstruction shall be evaluated, while the 1937 amendment emphasizes the additional factor of a change in the natural course of the stream which change might cause loss or damage to riparian owners. Particularly significant and important is the fact that, while the statute purports to regulate *all* the Commonwealth's streams and rivers (including private streams), yet certain small and "purely private" streams are excepted from such regulations *only if the obstruction therein "cannot in any way imperil life or property above or below"* such obstruction. The legislative purpose is thus made clear; the test as to inclusion of a particular obstruction within the regulatory

power of the Board is whether it presents a potentiality of danger to life or property, or both, even though the stream be small and "purely private".

The unsupervised and unregulated placement of obstructions, such as dams, in streams and rivers carries with it extremely great potentialities of danger to the lives of persons and properties within the area: even greater is the potentiality of danger in unsupervised and unregulated maintenance of such dams and obstructions. Prior to the passage of this legislation floods had given grim evidence of such potentialities.[5] Both the statutory language and the circumstances surrounding its passage indicate the legislative purpose and *why* the regulation of water obstructions was necessary.

With thousands of streams and rivers within the Commonwealth, each presenting its particular problem, it would have been impossible for the legislature to provide a hard and fast rule to govern each situation. Particularly apposite is the language of the Superior Court in *Weinstein Liquor License Case,* 159 Pa. Superior Ct. 437, 441, 48 A. 2d 1: "It was not only impractical but almost impossible for the legislature to anticipate all the various situations that might arise in citation cases and provide therefor by specific standards or to classify them". The only practical approach was that which the legislature herein adopted: in the exercise of its police power, to provide for the regulation of *all* water obstructions, existing and *in futuro,* in the Commonwealth's streams and rivers, setting up a general standard or criterion both for the

---

[5] Mindful of both the Johnstown and Austin floods, the then Governor urged both the Senate and the House of Representatives in a message in 1913 to adopt the regulatory legislation embodied in the Act of 1913, supra: Pennsylvania Senate Journal, Part I, 1913, pp. 26, 27.

placement and maintenance of such obstruction and to vest in an administrative agency the power to effect such regulation by the determination of the facts in each particular case and the promulgation of rules, all in accordance with the underlying purpose of the statute and the general standard or regulation as promulgated therein. The Board is not granted the power to determine what the law should be, but simply to apply the law as enunciated by the legislative body to particular circumstances. The Board's authority to act is not subject to its whim or caprice; it is circumscribed by a definite standard. Under this statute the Board must consider the construction of a new obstruction, the addition to or alteration of an existing obstruction and the maintenance of an existing obstruction from two points of view: (1) does the proposed construction, the alteration of or addition to an existing obstruction or the maintenance of an existing obstruction create a situation involving a potentiality of danger either to life or property and (2) does the existing obstruction or will the new obstruction change or divert the natural course of the stream or river? Such standards are neither vague nor indefinite; they are definite yardsticks which the Board must utilize in evaluating each particular existing or proposed water obstruction. The existence of such standards precludes arbitrary action on the part of the Board and any refusal to issue a permit for the construction of a new, or the addition to or alteration of an existing, obstruction must bear a reasonable relation to the object of the legislative mandate. Legislative standards such as herein presented have been sustained as valid by this and other Courts: *Commonwealth v. Emmers,* 221 Pa. 298, 305, 70 A. 762;[6] *Weaverland Independent*

---

[6] The Court below pointed out that the statute in the *Emmers* case, unlike the present statute, provided for an appeal from the

*School District Case,* 378 Pa. 449, 106 A. 2d 812; *Weinstein Liquor License Case,* 159 Pa. Superior Ct. 437, 48 A. 2d 1; *U. S. v. Grimaud,* 220 U. S. 506, 55 L. Ed. 563; *Louisville Bridge Co. v. U. S.,* 242 U. S. 409, 61 L. Ed. 395; *Conway v. New Hampshire Water Resources Board,* 89 N. H. 346, 199 A. 83; *Jersey City v. State Water Policy Commission,* 118 N.J.L. 72, 191 A. 456.

We said in *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147, 164, and have consistently so held: "We can declare an Act of Assembly void only when it violates the constitution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation in our minds".[7] Not only does the instant statute not present a clear, palpable and plain violation of the Constitution, but on the contrary *a reading of the statute in its entirety* is convincing of its validity. That the regulation of the stream and river obstructions, existing and *in futuro,* is within the police power of the Commonwealth is conceded. That the legislature has not delegated to this Board law-making power is clear. That the Board, in the exercise of the regulatory power, is circumscribed by definite standards is evident from the language of the statute in its entirety. The probability of loss of life or property which inheres in the danger of an improperly constructed or maintained obstruction and the probability of damage arising from the change or diversion of a water course by an improper construction or an obstruction are definite

action of the health commissioner to the courts. Even without such provision, as in the present statute, judicial review of the administrative agency's or official's action is open to an aggrieved party: *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 460, 130 A. 2d 686, and cases therein cited.

[7] *Tranter v. Allegheny Co. Authority,* 316 Pa. 65, 75, 173 A. 289; *Kelly v. Baldwin,* 319 Pa. 53, 54, 179 A. 736.

standards by which the legislature has circumscribed the orbit of the Board's authority.

Order reversed and the matter remanded to the Court of Common Pleas of Cumberland County for further proceedings not inconsistent with this opinion. Costs to abide the event.[8]

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The power to make laws is constitutionally vested in the Legislature and in it alone. This legislative power to make laws can neither be delegated nor abdicated nor abrogated. In *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587, the Court said (page 47): "A fundamental principle of our constitutional law is that the power conferred upon a legislature to make laws cannot be delegated by that branch of government to any other body or authority: Cooley's Constitutional Limitations, p. 224 (8th ed.); United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 53 S. Ct. 42; Baldwin Township Annexation Case, 305 Pa. 490, 158 A. 272; American Baseball Club v. Phila., 312 Pa. 311, 167 A. 891; Holgate Bros. v. Bashore, 331 Pa. 255, 200 A. 672; Bell Telephone Co. of Penna. v. Driscoll, 343 Pa. 109, 21 A. 2d 912; Kel-

---

[8] The record indicates that, in addition to this equity action, the Commonwealth instituted a criminal action against the defendant and its president for violation of Section 7 of the Act, that both defendants were indicted and motions to quash the indictments were filed on the ground that the statute was unconstitutional. While the Court below in its opinion stated that its action would determine not only the preliminary objections filed in the equity action but also the motions to quash the indictments in the criminal action, yet in its order the Court simply sustained the preliminary objections in the equity action. The motions to quash the indictments are not before this Court.

lerman v. Philadelphia, 139 Pa. Superior Ct. 569, 13 A. 2d 84."

However, the Legislature in enacting a statute can give an administrative body or agency* a discretionary and administrative power, provided it prescribes definite, reasonable and lawful standards to guide, limit and govern the agency's power: *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 130 A. 2d 686. This restrictive limitation is a fundamental and an absolutely essential requisite if our American System of Constitutional Government is to be preserved.

The Water Obstruction Act of June 25, 1913, P. L. 555, as amended by the Act of May 6, 1937, P. L. 559, created a Water and Power Resources Board for the regulation of dams and water obstructions in all streams or bodies of water wholly or partly within the Commonwealth, except the tidal waters of the Delaware River and of its navigable tributaries. Section 2 as amended prohibits the construction of any dam or any other water obstruction, or the changing or diminishing the course, current or cross section of any stream or body of water *without the consent or permit* of the Board after written application thereto. The key section, so far as the instant case is concerned, is §4 which provides: "The commission shall have power to grant or withhold such consent or permit, or may . . . make a part of said consent or permit such conditions, regulations and restrictions *as may be deemed by it advisable.*" If this section is considered alone the Act is indubitably unconstitutional.

Section 5 as amended provides: ". . . If the board shall determine that such dam or water obstruction is unsafe or needs repair, alteration or change in its structure or location, or should be removed as being

---

* Often called alphabetical agencies.

unsafe and not susceptible of repair, or for any reason is derogatory to the regimen of the stream" the Board may order the owner to make repairs, etc. Section 5 as amended further provides that it was the Legislative intent to include all types of water obstructions no matter when constructed, and all changes in the course, current or cross section of any stream or body of water irrespective of whether such obstructions or changes be temporary or permanent.

Section 6 of the Act of 1913 provides: "If the condition of any dam or other water obstruction be so dangerous to the public safety as not to permit of the giving of the notice, hereinbefore provided, to the owner or owners of such obstruction, to remove such dangerous condition, the commission [now a board] shall have power to remedy such condition by repair, removal, or otherwise, and may recover the cost and expense thereof from the owner or owners as debts are now by law recoverable."

The bill of complaint of the Water and Power Resources Board averred that defendant had increased the height of a pre-existing water obstruction or dam 17 inches in a natural non-navigable water stream which flowed through defendant's land, without obtaining the consent or permit of the board, and prayed for its removal. The complaint did not aver that the dam or the additional water obstruction of 17 inches was unsafe or in need of repairs or was dangerous to the public safety. Upon this record the lower Court correctly sustained defendant's preliminary objections.

The object or purpose of the Act is not mentioned. Was it intended to protect the lives and/or the property of upper and /or lower riparian owners, or to protect the fish life in the stream, or to conserve the water of the stream, or to prevent floods, or was it to give the board power to remedy, repair or remove or

cause to be remedied, repaired or removed water obstructions or changes in the course of bodies of water *where the dam or obstruction was unsafe or in need of repair or the conditions were dangerous to the public safety,* or was there some other undisclosed private or public purpose?

Section 4 specifically authorizes the commission (now the board) to grant or withhold its consent or permit or to impose conditions, regulations and restrictions *as the board may deem advisable.* If this is the test or standard which is prescribed by the Legislature, no definite reasonable and lawful standards are established to guide, limit and govern the board's power or consent, and the Act of 1913 as amended by the Act of 1937 is we repeat clearly, undoubtedly and unquestionably unconstitutional! (See infra.) If, on the other hand, the Act of 1913 and the Amendment of 1937 construed together and in their entirety, can be interpreted to give the board power to (1) require the repair or removal of water obstructions or dams which are in need of repair or are otherwise unsafe, and (2) prohibit changes in the course of bodies of water *which are dangerous to the public safety,* the Acts as thus construed would be within the inherent police power of the State and would be a wise and constitutional delegation of power.

The question of the *extent* of the power or authority of the board is the real problem in this case and the crucial point on which we differ. The same question was posed in the case of *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 145 A. 2d 172. Mr. Justice BENJAMIN R. JONES thus answered the question in that case:

"Initially, the power of the Commission to allocate costs in highway-rail crossing situations must be con-

sidered. In so doing we must bear in mind that the Commission's authority must either arise from the express words of the statute or by strong and necessary implication therefrom. As President Judge RHODES aptly said in West Penn Railways Company v. Pennsylvania Public Utility Commission, 135 Pa. Superior Ct. 89, 99, 4 A. 2d 545: 'The area of administrative activity is not boundless; the commission's power is statutory; and the legislative grant of power to act in any particular case must be clear (Day v. Public Service Commission et al., 312 Pa. 381, 384, 167 A. 565).'"

That standard is particularly pertinent in the instant case and if we apply it, we must necessarily reach the conclusion that the board does not and cannot possess the *unlimited and unfettered* power it attempts to here exercise, for to so hold would make the entire Act and Amendment unconstitutional. Whenever an Act is reasonably susceptible of two interpretations, under one of which it would be constitutional and under the other unconstitutional, the Court will adopt the interpretation which makes the Act constitutional: *Evans v. Norriton Township Municipal Authority,* 370 Pa. 150, 87 A. 2d 474; *Tranter v. Allegheny County Authority,* 316 Pa. 65, 173 A. 289; *Fidelity-Philadelphia Trust Co. v. Hines,* 337 Pa. 48, 10 A. 2d 553; *Carr v. Aetna A. & L. Co.,* 263 Pa. 87, 106 A. 107.

The majority opinion, instead of applying the above mentioned test pertaining to (1) the extent of power and (2) the construction of an Act when it is reasonably susceptible of two meanings, has applied the familiar principle that an Act of Assembly is presumed to be constitutional and will be declared void only when it violates the Constitution clearly, palpably and plainly: *Evans v. Norriton Township Municipal Authority,* 370 Pa., supra; *Tranter v. Allegheny County Authority,* 316 Pa., supra. However, this test was

never intended to permit a violation, or even a little violation of the Constitution. It may be pertinent to ask, what is often overlooked—which is more important, the Constitution or an Act of the Legislature? The answer is easy—the use; misuse, abuse or misapplication of a test or standard cannot validate an unconstitutional Act, nor raise an Act of the Legislature above the Constitution.

The majority opinion says that the board's authority to act "is circumscribed by a definite standard . . . (1) does the proposed construction . . . create a situation involving a potentiality of danger either to life or property and (2) does the existing obstruction or will the new obstruction change or divert the natural course of the stream or river?" While this second standard would be clearly unconstitutional, there is no word or sentence in the Act directing or setting up this standard. On the contrary the majority's second standard is absolutely contrary to the specific language of Section 4 of the Act of 1913 (and its Amendment) since the administrative board is therein clearly and expressly given authority *to consent or to refuse to consent* to the change or diversion of the natural course of the stream or river wherever in their *unfettered discretion* they deem it advisable. We have hereinbefore expressed the opinion that supervision and control over obstructions or dams which are unsafe and over changes in streams which make them dangerous to the public safety would be constitutional. However, we repeat, the Acts cannot possibly be stretched to prohibit *any* obstructions however slight or *any* changes in streams or rivers however slight for the reason that such a delegation of unlimited and unrestricted power at the caprice of a board would be a clear violation of the centuries old rights of private property which are guaranteed by our Constitutions.

Our Constitutional Form and System of Government becomes a mirage when Courts unwittingly sustain statutes which delegate to an administrative body *unrestricted* power to make rules and regulations which have the effect of law and which at their *uncontrolled whim or discretion* can whittle away or destroy the fundamental rights of liberty and of private property which are guaranteed by our Federal* and State** Constitutions.

For over a century it has been the proud boast of our nation that "ours is a government of laws and not of men", although in recent years this boast often has a hollow ring. What is meant by a government of laws and not of man? A government of laws is easily understood. The laws are written and apply to everyone, irrespective of the wishes of any public official or administrative body which administers them. A government of men means that the present temporary members of an administrative body (often aptly called Bureaucrats) may make regulations at their whim or caprice which have the force and effect of law and may be changed at will by themselves or their successors. These administrative bodies have so mushroomed in the last 20 years and their claimed jurisdiction and power have become so widespread and omnipotent, that the American people—beset by worries, doubts and fears caused by the kaleidoscopic changes in all phases of our life in this war-tormented world—seem unable to realize that our American System of Government is being rapidly eroded and our Constitutional Liberties constantly curtailed.

Plaintiff's pleadings and record disclose no authority or justification for its order of removal. I would

---

* U. S. Const., Amend. V, Amend. XIV.
** Constitution of Penna., Art. I, §1 and §10.

modify the order of the Court below which sustained defendant's preliminary objections to the injunctive relief sought by the Water and Power Resources Board, by giving the board leave to amend its pleadings, if it so desired.