## Commonwealth v. Joachim

 

*Marshall Anders, District Attorney*, for Commonwealth.
*Edwin Krawitz*, for defendant.

WILLIAMS, *J.*, May 15, 1978—Defendant has been charged with the crime of arson on certain premises known as 607 Main Street, Stroudsburg, Pa., in connection with a fire which occurred on said premises on November 27, 1977, at 4:00 a.m. He seeks to suppress at trial the results of the chemical analysis of ashes and embers taken from the fire. It is claimed that this was done on December 28, 1977, while defendant was doing work on the premises for the sublessee thereof. It is further alleged the state police unlawfully entered the premises and removed the aforesaid material without a search warrant.

## FINDINGS OF FACT

1. A fire occurred at 607 Main Street, Stroudsburg, Pa. on November 27, 1977, at 4:00 a.m. The Chief of the Stroudsburg Fire Department, which was fighting the fire, telephoned Lawrence Cordisco, a state policeman, whose duty with the police was to investigate the origin and cause of fires and told him he was suspicious as to the cause of the fire.

2. Trooper Cordisco responded to the call and reached the scene of the fire about 7:00 a.m., while the fire was still in progress. He made an inspection of the premises and concluded the fire was incendiary in origin. He then, on November 27, 1977, while the fire was in progress, removed ashes and some pieces of wood to submit for analysis by the state police crime laboratory.

3. The ashes and pieces of wood taken by the state policeman were not taken on or about December 28, 1977, while defendant was doing work for the sublessee of the building as alleged in defendant's suppression petition.

4. Petitioner was not, on November 27, 1977, the owner of the building, is not a lessee or sublessee nor did he have any proprietary rights in the business conducted on the premises. He had earlier sold his proprietary rights to the business to his brother-in-law, Franklin Judge.

5. Defendant orally advised the state trooper on November 30, 1977, that his brother-in-law had asked him "to keep an eye on the business." It further appears from his conversation with the state trooper that he was "affiliated" with the business in that he had a dough machine on the premises from which he obtained dough in the operation of his pizza business in East Stroudsburg, Pa.

6. The owner of the building is Betty Fisher.

## DISCUSSION

Two issues are before us for decision:

(a) Does defendant have standing to raise the issue of the legality of the search?

(b) Was the entry into the building without a

warrant, an illegal search and seizure in violation of defendant's Fourth Amendment rights?

Whether a person has standing to challenge the legality of the search depends upon whether or not the area searched " 'was one in which there was a reasonable expectation of freedom from governmental intrusion.' " Com. v. Rowe, 433 Pa. 14, 17, 249 A. 2d 911 (1969). The circumstances here shown were not a search and seizure of evidence intended to be used against defendant or any specified person. The material taken for analysis was to be utilized for the purpose of furthering an investigation of the fire. The analysis would serve either to confirm the opinion of the state policeman that the fire was incendiary or to negate it. No arrest was made prior to the removal of the materials nor is there any evidence that at the time of the removal, defendant was a suspect. The police officer had statutory authority to investigate the fire and determine its origin. The Act of April 27, 1927, P.L. 450, as last amended February 17, 1972, P.L. 72, 35 P.S. §1184, provides: "The Pennsylvania State Police, in addition to the investigation made by any of the assistants, may at any time investigate the origin or circumstances of any fire occurring in this Commonwealth."

Under section 2 of the same act, 35 P.S. §1182, it is provided:

"Each of the aforesaid assistants shall inquire into the origin, cause, and other circumstances of every fire by which any property or life has been destroyed, damaged, or endangered, occurring within the territorial limits of their respective cities, boroughs, towns or townships, *and shall*

*make every effort to determine whether such fires were of incendiary origin or the result of design, carelessness or accident."* (Emphasis supplied.)

In light of this statute we reach two conclusions:

(a) That since the state policeman in removing the ashes and pieces of wood was acting within the statutory mandate of making every effort to learn if the fire was incendiary, he was lawfully on the premises at the time of the fire and his entry thereon was not illegal.

(b) Since a serious fire was in progress, there could be no reasonable expectancy on the part of defendant that the area from which the materials were taken would be free of governmental intrusion. Since the seizure was in pursuance of a statutory authority and duty, not directed at defendant, but to ascertain the cause of the fire and taken while the fire was in progress, we find no violation of defendant's right to privacy and as a consequence he has no standing to challenge the entry into the building or the seizure of the materials or the results of the chemical analysis thereof.

Defense counsel has questioned the constitutionality of the statute. We find it was enacted to protect the health, safety and welfare of the public and is a proper exercise of the police power of the state.

In DePaul v. Kauffman, 441 Pa. 386, 393, 272 A. 2d 500 (1971), it is stated: "It has long been recognized that property rights are not absolute and that persons hold their property ' "subject to valid police regulation, made, and to be made, for the health and comfort of people. . . ." ' "

In Com. v. Harmar Coal Co., 452 Pa. 77, 92 (1973), it is stated:

"A State in the exercise of its police power may, within constitutional limitations, not only suppress what is offensive, disorderly or unsanitary, but enact regulations to promote the public health, morals or safety and the general well-being of the community: Beacon v. Walker, 204 U.S. 311 (1907). This power has been used to prevent industrial practices in the use of private property which were injurious to the public: The Slaughter House Cases, 83 U.S. 36 (1872). The police power may even be exercised over property and current business operations, requiring the destruction of existing property, Miller v. Schoene, 276 U.S. 272 (1928), or the imposition of new costs, Queenside Hills Realty Co., Inc. v. Saxl, 328 U.S. 80 (1946); The Slaughter House Cases, 83 U.S. 36 (1872). Regulations maintaining the State's water resources have also been held to be within the scope of the police power: Hudson County Water Co. v. McCarter, 209 U.S. 349 (1908); Com. v. Emmers, 33 Pa. Superior Ct. 151 (1907), aff'd, 221 Pa. 298, 70 A. 762 (1908)."

Here, the police power exercised is clearly to protect the health and safety of the public. It imposes no burden on the property owner and serves to protect his property against incendiary fires. The statutory provisions are clearly within the police power of the state to enact.

ORDER

And now, May 15, 1978, petition for suppression is denied.