## In re George Cerjanec

*Robert J. Shostak*, for Commonwealth.

*Henry McC. Ingram*, for appellants.

BROUGHTON, Chairman, December 31, 1973.— This case is an appeal from an action of the Secretary of Environmental Resources, taken pursuant to section 2 of the Act of June 3, 1943, P. L. 848, 52 PS §12 (hereinafter Certification Act of 1943) suspending the certification of George Cerjanec as a mine foreman, and the certificates of Willard May and Emil Paci as assistant mine foremen, pending a hearing under the same statute relative to what further action

should be taken. The appeal was taken both from the temporary suspension, pending a hearing, and from the secretary's action in selecting the hearing officer and setting the procedure for that hearing.

This adjudication deals only with the issues relating to the temporary suspension.

## FINDINGS OF FACT

1. Appellant, George Cerjanec, is mine foreman for the Nemacelin Mine, owned and operated by Buckeye Coal Company. Appellants, Willard May and Emil Paci, are assistant mine foremen at the same mine. All are certified for the positions they hold under the Certification Act of June 3, 1943.

2. On September 4, 1973, a mine inspector for the department, Paul H. Hyatt, made a complaint to the Secretary of Environmental Resources under section 2 of the Certification Act of 1943, that appellants had failed on July 6, 1973, to perform certain duties with which they were charged by law.

3. On September 20, 1973, by a letter sent to each of the appellants, the Secretary of Environmental Resources gave notice that a hearing would be held on October 12, 1973, to determine whether sanctions should be imposed under section 2 of the Certification Act of 1943, and, pending that hearing, the certificates of each of the appellants were temporarily suspended.

4. The duty that was not discharged was the duty to maintain adequate ventilation in the mine on July 6, 1973, especially in the 844 Section of the Nemacolin Mine.

5. The said inadequate ventilation was a result of failure in temporary fabric barriers to prevent the passage of air through passageways short of the working face. There were, in the 844 Section, an unusually large number of such temporary barriers,

or checks. Three of these checks had failed on the morning of July 6, 1973, within three hours of having been inspected by assistant mine foreman Paci.

6. The conditions that existed on July 6, 1973, did not and could not have been reasonably taken to indicate such a safety problem as would justify the immediate temporary suspension of appellants as of September 20, 1973.

## DISCUSSION

Section 2 of the Act of June 3, 1943, P. L. 848, provides:

"Upon complaint of any mine inspector that a mine foreman, assistant mine foreman or fire boss has failed or refused to perform any duty with which he is charged under the provisions of the law, or has engaged in any acts or activities interfering with the safe and lawfull operation of any mine or colliery, specifying the particular acts, failure or refusal, the Secretary of Mines, or in his absence or incapacity to act, any deputy secretary, may, after written notice to such official, setting forth said complaint, a hearing thereon and appropriate findings as hereinafter provided, suspend for a period of not more than one year, or revoke absolutely, the certificate of such mine foreman, assistant mine foreman or fire boss. The Secretary of Mines, upon receiving any such complaint, shall have the power, if he deems such action advisable, forthwith to suspend the certificate of such official temporarily until such hearing and determination of the charges have been completed."

It is with the last sentence of this section that this adjudication is concerned. That sentence allows a certificate to be suspended forthwith without a hearing, but pending a hearing, if the secretary "deems such action advisable."

On the surface, these are no standards at all, no

criteria to guide the secretary in deciding whether or not he deems such action "advisable" in any particular case. Nor is there any standard explicity set forth to help us decide whether the secretary's deeming was reasonable in this case.

Implicity, however, we think the standard is reasonably obvious. Clearly, in determining what the legislative standard is, we must look not merely to section 2 of the Certification Act of 1943, but to the entire statute: Commonwealth of Pennsylvania Water and Resources Board v. Green Spring Company, 394 Pa. 1 (1958). Further, we think it is clear that, in turn, the Certification Act of 1943 must be read in the context of other statutes unmistakably incorporated therein. In particular, the Certification Act of 1943 must be read in light of the Pennsylvania Bituminous Coal Mine Act of July 17, 1961, P. L. 659, as amended, 52 PS §§701-101, et seq.[1]

The latter statute sets forth the duties of mine foremen and assistant mine foremen which, when violated, give rise to the possibility of sanctions under the Certification Act of 1943.

The purpose of the Bituminous Coal Mine Act of 1961 is to protect the health and safety of miners. The duties of mine inspectors, as set forth in the Bituminous Coal Mine Act of July 17, 1961, relate to safety. So do the duties of mine foremen and assistant mine foremen. The "complaint" of a mine inspector referred to in section 2 of the Certification

---

[1] We note that although the Bituminous Coal Mine Act of July 17, 1961, supra, was enacted in 1961, the purpose of the Certification Act of 1943 was not affected thereby. There were earlier statutes also relating to mine safety in force at that time. The earliest general law was the Act of May 15, 1893, P. L. 52, though there seem to have been other laws in force before that one dealing with particular safety problems.

Act of 1943, quoted supra, could, therefore, relate only to safety.

The provision for suspension after hearing appears to have a punitive aspect, being designed to give mine foremen, assistant mine foremen and mine examiners[2] a negative incentive to perform the duties devolved on them by the Bituminous Coal Mine Act of 1961, supra. But the Certification Act of 1943 also appears to contemplate that if, after hearing, the secretary decides that a mine foreman, assistant mine foreman or examiner has done or failed to do his duties in a way that indicates that person is no longer qualified to adequately protect the safety of miners as a mine foreman, assistant mine foreman or mine examiner, then the secretary may revoke that person's certificate absolutely.

It is our opinion that the power to temporarily suspend such a certificate pending hearing and, therefore, without hearing, may not be reasonably exercised in support of the punitive or deterrent purpose of the Act of June 3, 1943, P. L. 848. If punishment is to be meted out, we think procedural due process requires that it be meted out after hearing. If it appears to the secretary, however, that a mine foreman, assistant mine foreman, or mine examiner is so unqualified to perform his duties that his continued employment constitutes an immediate hazard to the health and safety of miners during the time pending hearing, then it would not be a violation of due process to temporarily suspend a certificate pending hearing: Ewing v. Mytinger & Casselberry, Inc. 339 U.S. 594 (1950). In such a case, of course, the secretary must act reasonably, and the hearing must be held and the case dis-

---

[2] The term "fire boss," was changed to "mine examiner" in the Pennsylvania Bituminous Coal Mine Act of 1961, supra, in 1961.

posed of following the hearing within a reasonably short period of time. This board has jurisdiction, as well, to hear and decide an appeal from the temporary suspension.

We do not think, in this case, that three weeks (September 20 to October 12, 1973) is, on its face, an unreasonably long period of time. We note that in one analogous type of case, temporary suspension of policemen or firemen pending a hearing on charges of misconduct in office, the law commonly requires a hearing to be held within 30 days of the suspension. See, e.g., the Act of June 25, 1919, P. L. 581, as amended, 53 PS §12638; but see the Act of July 9, 1963, P. L. 217, as amended, 53 PS §23537, where suspension is allowed for only 10 days prior to hearing.

The case leaves the question of whether the secretary acted reasonably in this case.

We are satisfied that the conditions that existed in the 844 Section of the Nemacolin Mine on July 6, 1973, were extremely serious. The inadequacy of the ventilation was a violation of section 242(a), and was a result of violations of section 243(b), (e) and (f) of the Pennsylvania Bituminous Coal Mine Act, supra, 52 PS §§701-242(a) and 701-243(b), (e) and (f). The large number of temporary checks in the No. 4 header, together with the three entirely open cross cuts immediately outby[3] the working face, made periodic losses of adequate air flow almost inevitable, in the absence of nearby continuous monitoring and patrolling. Such nearby continuous monitoring and patrolling was not provided, at least on the morning of July 6, 1973. The persons responsible for that failure to provide the necessary monitoring and patrolling were appellants Emil Paci and George Cerjanec; Paci,

---

[3] In mining terminology, "outby" means "toward the entrance from," and "inby" means "toward the working face from."

directly, and Cerjanec, indirectly. The fact that the Bituminous Coal Mine Act, supra, requires less frequent monitoring is irrelevant. If continuous monitoring is required to maintain adequate ventilation, then we believe section 242(a) of the Bituminous Coal Mine Act, supra, which was enacted in order to protect the health and safety of the miners, would mean that continuous monitoring would be required. We are stronger in. this conviction where, as here, the conditions requiring continuous monitoring, the large number of temporary checks, were created by these appellants, among others.

In addition to relying on too many temporary checks, with insufficient policing of those checks, there was a clear violation of section 234(b) of the Pennsylvania Bituminous Coal Mine Act, supra, which provided as follows:

*"Crosscuts between intakes and return air courses shall be closed, except the one nearest the face,* crosscuts between rooms shall be closed, where necessary, or when required by the mine inspector in the district, to provide adequate ventilation at the working face."

According to the testimony of Emil Paci, there were three checks outby the working face in the No. 4 header of Section 844, on the right as one approached the face, that were entirely open. As a result, it was practically impossible to get an air flow reading that would inform on whether Section 242(b) of the Pennsylvania Bituminous Coal Mine Act of 1961, supra, was being complied with. Section 242(b) requires that there be a flow of 6,000 cubic feet per minute (cfm) in the last open crosscut before the face. In this case, Emil Paci (and later, on July 6, 1973, George Cerjanec) took readings three open crosscuts before the face and, in fact, before the last split of air, between the right and left sides of the 844 Section, and, by their testimony, they felt that to be sufficient. The fact that they felt

that the measurement indicated sufficient air does at least call into question their competence to continue to perform these duties under the Bituminous Coal Mine Act of 1961, in view of the clear requirement of Section 242(b) of that act that 6,000 cfm be maintained at the *last* open crosscut.

If the temporary suspension, pending hearing, had occurred shortly after July 6, 1973, before the conditions in the 844 Section had been corrected, then, under the standards we have enuciated above, we would probably have upheld the secretary. At that time an immediate hazard to the health and safety of miners existed and it existed because of the ventilation and testing procedures followed by these individuals.

But the secretary's action was taken on September 20, 1973, nearly two and one-half months after the inadequate ventilation was discovered. On July 6, 1973, Mine Inspector Paul Hyatt closed down the 844 Section, presumably under Section 120(a) of the Pennsylvania Bituminous Coal Mine Act of July 17, 1961, as amended, 52 PS §70-126, which provides as follows:

"Mine Inspectors' orders; cease work.

"(a) If the mine inspector discovers any chamber, breast, or other working place being driven in advance of the air current, contrary to the requirements of this act, he shall order the workmen in such places to cease work at once until the law is complied with."

On July 30, 1973, Mine Inspector Hyatt allowed the reopening of the 844 Section. This must, by law, have been based on a finding by him that the law was then being complied with, and that finding would be required to consider the adequacy of the procedures followed by those in charge of ventilation in the 844 Section. In addition, we note that there have been other inspections by Mine Inspector Hyatt since July 30, 1973.

No evidence was introduced that there is, now, an

immediate hazard to the health and safety of miners at the Nemacolin Mine, nor was there any showing that the health and safety of miners were likely to be threatened by the continued employment of these appellants during the three to five weeks pending hearing and determination of the charges. Instead, the evidence tended to show that Inspector Hyatt was satisfied that proper procedures were being followed as of July 30, 1973.

Under these circumstances, we reverse the action of the secretary in suspending the certificates of George Cerjanec and Emil Paci temporarily, pending the hearing called for by the first sentence of Section 2 of the Act of June 3, 1943, P. L. 848.

Similar action was taken with respect to Willard May, at the hearing held September 27, 1973, at the close of the department's presentation of evidence, for the reason that none of the evidence submitted by the department at that hearing tended to implicate May as responsible for the inadequate ventilation on July 6, 1973. Had we not taken that action at that time, we would be reinstating May's certificate as of the effective date of this order, along with Cerjanec's and Paci's, for the same reasons.

By way of summary, and including only what we consider to be crucial findings of fact,[4] we make the following findings of fact and conclusions of law:

## CONCLUSIONS OF LAW

1. The Environmental Hearing Board has jurisdiction over the subject matter of this appeal and over the parties before it.

---

[4] We limit our findings of fact strictly to those necessary to the result, in order to limit as far as possible any bias in connection with the hearing on the ultimate merits, or possible future proceedings before this board or in the courts.

2. The Certification Act of June 3, 1943 contemplated immediate, temporary suspension of a mine foreman or assistant mine foreman, pending a hearing only if the Secretary of Mines (now Secretary of Environmental Resources) reasonably believed such immediate, temporary suspension was necessary to protect the safety and health of miners.

3. The secretary had no reasonable basis for his action in immediately suspending the appellants' certificates under the Certification Act of 1943, in this case.

## ORDER

And now, effective September 29, 1973, it is ordered that the certificates of George Cerjanec as a mine foreman, and Emil Paci as an assistant mine foreman, be reinstated pending a hearing and determination on the charges under Section 2 of the Act of June 3, 1943, P. L. 848, and that, effective September 29, 1973, the certificate of Willard May be reinstated pending a hearing and determination under the same act. (We note for the record that this order was read orally to counsel for all parties on September 29, 1973, and that it was indicated at that time that no appeal would be taken. However, should the department wish to take an appeal, this is intended to be a final adjudication with respect to the action of the secretary temporarily suspending the said certificates pending a hearing and, although this order became effective September 29, 1973, it is being formally entered and distributed in writing to the parties on the filing date, December 31, 1973.)

We take no action at this time or any other aspect of, or issue raised by, the above-captioned appeals of Messrs. Cerjanec, Paci and May.